## NORFOLK & W. RY. CO. v. UNITED STATES et al.

District Court, W. D. Virginia.

Oct. 16, 1931.

968

S. King Funkhouser, of Roanoke, Va., D. Lynch Younger, of Washington, D. C., and Theodore W. Reath, of Philadelphia, Pa. (Funkhouser, Apperson & Whittle, of Roanoke, Va., on the brief), for petitioner.

Elmer B. Collins, Sp. Asst. to Atty. Gen., John Lord O'Brian, Asst. to Atty. Gen., and John Paul, U. S. Atty., of Harrisonburg, Va., for the United States.

Nelson Thomas and Daniel W. Knowlton, both of Washington, D. C. (Nelson Thomas, of Washington, D. C., on the brief), for Interstate Commerce Commission.

Before PARKER, Circuit Judge, and McDOWELL and WAY, District Judges.

PARKER, Circuit Judge.

This is a suit instituted by the Norfolk & Western Railway Company against the United States and the Interstate Commerce Commission, to enjoin the enforcement of an accounting order of the commission which directs the railway company to include its investment in certain coal mines under balance sheet account 705, which embraces miscellaneous or nontransportation property. The company alleges that these mines are operated in connection with its system of transportation, and produce 48 per cent. of its total fuel requirements; that it is entitled to have the investment therein included with transportation property under balance sheet account 701, which embraces investment in road and equipment; and that the commission's order classifying same as nontransportation property is without warrant or authority of law, exceeds the power of the commission, is unsupported by the evidence, and is an arbitrary abuse of power on the part of the commission. It prays for an injunction restraining the enforcement of the order, and asks that same be set aside and annulled. A special court of three judges has been convened pursuant to statute, and the case has been submitted as upon final hearing.

There is practically no dispute about the facts; and, although the entire record before the commission has been put in evidence and examined by us, the comparatively brief statement in its report sets forth all of the facts which bear upon the questions involved. These facts may be summarized as follows: Complainant is a common carrier by railroad engaged in interstate commerce. It owns three large collieries in West Virginia, which were purchased for the purpose of furnishing a part of the coal supply which it requires. Two of these were purchased in 1917, and one in 1920. The total estimated tonnage of all the properties at the time of purchase, including leases subsequently acquired, was 53,103,000 tons. The total of the coal mined up to September 30, 1928, was 8,476,058 tons. The estimate as to the period which will be required for the exhaustion of the coal in the various collieries under normal conditions of production, reckoned from the year 1928, is 17 years, 33 years, and 35 years, respectively. The fuel requirements of complainant are about 3,250,000 tons of coal per annum; and,

from the collieries in question, approximately 48 per cent. of this requirement is obtained. Their entire output, except for small amounts of coal furnished to mine employees, is consumed in carrier operations.

The investment of complainant in these coal properties, including the purchase cost of the original properties, the cost of subsequently acquired leaseholds, and the cost of additions and betterments, was $3,661,036.63 as of September 30, 1928. The debits for depreciation and depletion as of the same date were $1,010,569.35, leaving a net capital investment as of that date of $2,650,467.28. Since the opening transaction, the investment has been carried by complainant in balance sheet account 705, which covers investments in physical property other than transportation property.

On August 3, 1927, complainant addressed a letter to the commission requesting that it be allowed to transfer the investment from account 705 to account 701, which covers investment in road and equipment. In response to this, the commission on January 14, 1928, entered an ex parte order directing that the investment be carried under account 705. Complainant thereupon petitioned for a rehearing, and a supplemental order was entered postponing the effective date of the original order and setting the matter down for hearing and argument. Extensive hearings were then held; and, on January 5, 1931, the commission entered the order, which we are asked to enjoin, directing that the investment be carried under account 705 and providing, among other things, that the charges to account 716, "Material and supplies," for coal produced for consumption in complainant's transportation operations be upon the basis of the average monthly cost per ton of producing the coal.

It appears that the commission has made and reported its final valuation of complainant's properties under section 19a of the (Interstate Commerce Act as added by Act March 1, 1913 and amended by) Transportation Act, § 433 (49 USCA § 19a), valuing them as of June 30, 1916. Norfolk & Western Railway Co., 26 Val. Rep. 255. As the collieries were acquired subsequently to 1916, they are not included in that report. On February 6, 1931, the commission made and published its recapture report under section 15a of the Interstate Act as added by Transportation Act, § 422 (49 USCA § 15a) setting forth therein the value of complainant's property for rate-making purposes, the net railway operating income, the excess net operating income, and the excess income recapturable, and directing complainant to pay over to the commission the recapturable amounts so found. Complainant filed protest and objections to this report; and the questions raised thereby are now in process of determination before the commission. In the report of the commission, the collieries of complainant are classified as noncarrier property, and are not included as an element in determining the rate base; and one of the objections to the report is that they have not been so included. The question as to whether they should be included is thus pending before the commission in that proceeding.

Complainant contends that its collieries are a part of its property devoted to transportation, and that it is entitled to have them included in any valuation of its transportation property which is to be used as a base for rate-making or recapture purposes; that the accounting required by the commission is used as a basis for arriving at the valuation adopted for these purposes; and that the order requiring it to classify its collieries as nontransportation property will result in its being deprived of the benefit of their value in the base fixed for rate making and for the recapture of excess income. The defendants deny the jurisdiction of the court to grant an injunction, contending that the order is purely negative, being a mere denial of a request to change the method of bookkeeping, that, if considered without relation to rate-making and recapture proceedings, it imposes no burden or hardship upon complainant, and that, if considered with relation to such proceedings, it is a mere step in the proceedings which the courts will not enjoin. On the merits, they say that the statute vests the commission with discretion in prescribing how accounts shall be kept by carriers; that an order made in the exercise of this discretion will not be enjoined, in the absence of abuse; and that a direction that collieries such as those here involved be classified as nontransportation property is not an abuse of discretion, but a fair and reasonable exercise thereof.

■■■ On the question of jurisdiction, it is clear that the order involved is not a mere negative order. It commands complainant to keep its accounts and make its reports in a certain definite way; and disobedience of the order would unquestionably subject complainant to the penalties prescribed by statute for the disobedience of an order of the commission. Nor is it a mere step in a rate-making or recapture proceeding. On the

contrary, it was entered pursuant to a statutory provision which existed before the enactment of the sections which authorize such proceedings. While it is true that the duty rests upon the commission, in prescribing the form of accounts which shall be kept by carriers and the reports which shall be made to it, to require that same disclose the information necessary to enable it to perform its duties under sections 19a and 15a of the Interstate Commerce Act as amended and added by Transportation Act §§ 433 and 422, we do not understand that any orders which the commission may make relative to accounting, or any reports which may be made to it in compliance with such orders, are binding as to the classification of property in any ratemaking or recapture proceedings which may arise. Notwithstanding accounting orders and reports made pursuant thereto, it is open to a carrier in any rate-making or recapture proceeding to contest what it regards as an improper classification of its property in arriving at the rate base.

■ But while we do not think that an accounting order such as this can be treated either as a binding classification of property in a rate-making or recapture proceeding or as a step in such proceedings, we cannot say that it imposes no burden or hardship furnishing ground for injunctive relief, if in fact it transcends the power of the commission or is so manifestly arbitrary and unreasonable as to evidence an abuse of discretion. Accounting under the order of the commission is not a mere matter of form, but one of substance. It sets forth the condition of public carriers for the information of their stock and bondholders and the investing public as well as for that of the commission. It furnishes the basis of corporate financing, and many other matters affecting their very existence. They are entitled, therefore, not to be subjected to accounting orders which transcend the powers of the commission or which are arbitrary or unreasonable; and we have no doubt that, as against an accounting order which so offends, a carrier is entitled to relief by injunction. There is jurisdiction in equity, therefore, to entertain the suit which has been instituted. See Kansas City Sou. R. Co. v. U. S., 231 U. S. 423, 34 S. Ct. 125, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1; Atlanta, B. & C. R. Co. v. U. S. (D. C.) 28 F. (2d) 885.

■ But although the court, for the reasons stated, has jurisdiction to entertain the suit of complainant, we do not think that complainant is entitled to the relief prayed.

The commission is vested by Congress with full power and authority to require reports from carriers and to prescribe the form of the accounts which they shall keep. See Interstate Commerce Act as amended, section 20, paragraphs 1 and 5, 49 USCA § 20(1) and (5). The purpose of vesting this power in the commission is that it may be able, by obtaining accurate information as to the business of the carriers, to perform properly the duties, such as the regulation of rates, imposed upon it by Congress. Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 S. Ct. 436, 56 L. Ed. 729. It is manifest that, without a uniform system of accounts for all carriers, it would be impossible for it to perform these duties intelligently; and so, in addition to the power to require reports, it is given the power to prescribe the forms in which the accounts of carriers shall be kept. What these forms shall be, and what items shall be allocated under particular subdivisions thereof, are obviously matters which must rest in the discretion of the commission; and the courts will not interfere with the exercise of that discretion, unless such exercise is so manifestly arbitrary and unreasonable as to transcend the commission's powers. Kansas City Sou. Ry. Co. v. U. S., 231 U. S. 423, 34 S. Ct. 125, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1.

■ The commission has for years required that coal mines be included under balance sheet account 705. The order of May 19, 1914, prescribed the classification, section 705 thereof being as follows:

"705. Miscellaneous Physical Property. This account shall include the accounting company's investments in physical property other than transportation property assignable to accounts Nos. 701 and 702, including hotels, restaurants, commercial power plants, etc., which are entirely distinct from transportation property and are not operated in connection with the transportation service of the accounting company.

"Items of Investment.

"Coal and other mines.

"Commercial power plants.

"Hotels and restaurants.

"Lands and buildings not used in transportation operations.

"Lands and other property acquired and held in anticipation of future use.

"Mineral and timber lands.

"Rails and other track material leased to others.

"Sawmills and other manufacturing plants not operated in connection with transportation service."

We cannot say that the inclusion within this classification of coal mines from which carriers obtain coal for use in transportation is arbitrary or unreasonable. On the contrary, it seems to us to be entirely reasonable and proper. Coal mining is a business entirely separate and distinct from the business of transportation; and the fact that the product of the mines is used in transportation does not mean that the mines themselves are so used. It has been expressly held that the mining of coal is not commerce, even though the coal when mined is to be used or transported in commerce. Delaware, L. & W. R. Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 407, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929. And it follows that coal mining is not transportation; for all transportation in the sense in which we are using the term here is commerce, although not all commerce is transportation.

Nor can the mining of coal to be used in transportation be said to be so closely related to that business that the mines may properly be treated as transportation equipment. The mining is an independent though subsidiary business, only the product of which is used in transportation. Carriers have need of many things; coal, iron, steel, timber, etc. Some of them may find it expedient to go into the business of manufacturing these commodities for their own use, but, when they do so, it is clear that they are engaging in a business which is separate and distinct from the business of transportation itself. Property employed in transportation is dedicated to the use of the public; property employed in such a subsidiary business is not so dedicated. The public may regulate the rate to be exacted in the operation of property dedicated to the public use; it has no such right with respect to other property. It is important, therefore, in the valuation of property owned by carriers to distinguish between property dedicated to the use of the public and property invested in a business which is not so dedicated, as it is the value of the former which must furnish the basis of rate-making and recapture proceedings.

Coal mines, even though owned and operated by a carrier, are clearly not dedicated to the use of the public. See Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280. Although the coal produced by operation of the mines may be said to be used by the public, the mines themselves are not so used. What is used, and all that is used, in the public business of transportation is the coal which prior to its use has been made available by the independent business of mining. The mines of a carrier therefore are not dedicated to a public use any more than are mines owned by a private corporation which supplies coal to a carrier under contract. They stand upon the same basis with respect to the public service as do plants for manufacturing cars or locomotives. A railroad may not abandon service on its railroad lines and may not lease or sell them without the consent of the commission, because of the rights of the public therein; but no one would contend that the carrier here might not at its pleasure discontinue the operation of its coal mines, or lease or sell them as it might see fit.

It is argued that the acquisition of the coal mines should be regarded as the acquisition of a fuel supply for the carrier; but even if so regarded, it is clear that a carrier may not have a fuel supply sufficient to last it for thirty-five years valued as property used in transportation for the purpose of fixing rates to be paid by the public. If it desires to speculate in the purchase of a fuel supply, it must do so at its own risk, and not at the risk of the public. But as a matter of fact, the acquisition of mines, as indicated above, is essentially different from the acquisition of coal. Their acquisition results in coal for the use of the carrier only after the independent business of mining has first been carried on. While coal which has been mined may be used by the carrier, coal in the mine is the basis, not of transportation, but of mining.

We have been referred to border line cases, involving the operation of power plants, gas plants, and plants for supplying water, in which the property so used has been classified by the commission as transportation property. There seems to be a difference, however, between these operations and coal mining, in that the product which they supply is used so directly and immediately in the service of transportation that it may properly be said that the property engaged therein is itself used by the public. No one, however, would say that the public is using the coal mines of this carrier merely because

the carrier is using the coal obtained from the mines. But it is for the commission and not for the courts to classify the property of the carriers and to prescribe the accounts which they shall keep; and it is clear that its classifications may properly rest upon the customs and practices of carriers rather than upon logical formulas or analytical reasoning with reference to use. The fact that most railroads own no coal mines, that the commission for years has followed the policy of classifying such mines as nontransportation property, and that all roads, even complainant itself, have followed the classification, is sufficient reason for continuing it. Unless the classifications prescribed are such that transportation property means practically the same thing with reference to the property of any carrier to which the classification may be applied, the reports to the commission will have little value, and it will be without the information necessary to enable it to perform the important duties required of it by Congress. Even if we thought, therefore, that the mines here in question ought logically to be classified under transportation property, "we still should not deem this a sufficient ground to declare that the Commission had abused its power. So long as it acts fairly and reasonably, within the grant of power constitutionally conferred by Congress, its orders are not open to judicial review." Kansas City Sou. Ry. Co. v. U. S., 231 U. S. 423, 456, 34 S. Ct. 125, 136, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1, supra.

Complaint is made of the order in question upon the further ground that it requires that charges for the coal produced in the collieries shall be upon the average monthly cost of production. We do not understand from this, however, that the carrier is confined to the mere cost of mining the coal, or is precluded from including in the monthly cost such items as are fairly chargeable to the cost of the coal on account of depletion, depreciation, carrying charges, and a fair return upon the investment. Complainant is required to submit, within thirty days after the close of each month, a statement showing the cost of coal as computed by it, together with the prices paid by it for coal purchased; and, if upon such reports the commission disallows proper charges on account of the coal obtained from its mines, complainant may obtain relief in a suit instituted for that purpose. There is nothing in the record before us which would justify the granting of such relief here.

For the reasons stated, the injunction will be denied, and the bill will be dismissed at the cost of complainant.

Bill dismissed.