## NORFOLK & WESTERN RAILWAY CO. *v.* UNITED STATES ET AL.

No. 18.   Argued October 19, 1932.—Decided November 7, 1932.

*Messrs. D. Lynch Younger* and *F. Markoe Rivinus,* with whom *Messrs. S. King Funkhouser, Harvey B. Apperson,* and *Theodore W. Reath* were on the brief, for appellant.

*Assistant to the Attorney General O'Brian,* with whom *Solicitor General Thacher,* and *Messrs. Charles H. Weston, William G. Davis, Elmer B. Collins, Daniel W.*

*Knowlton,* and *Nelson Thomas* were on the brief, for the United States and the Commission.

136

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The Interstate Commerce Commission issued an order pursuant to § 20 [1] of the Interstate Commerce Act, as amended, requiring the Norfolk & Western Railway Company to carry certain coal mining properties in its accounts as not used in the service of transportation. The railway filed a petition in the District Court to enjoin the enforcement of the order, and from a decree of dismissal by a District Court, of three judges, this appeal was taken.

During the period between 1917 and 1920 the railway experienced difficulty in obtaining an adequate supply of coal of satisfactory quality for use in its locomotives. In an effort to meet this situation and to reduce costs of operation three coal mines, adjacent to the right of way, were acquired, the terms of purchase being that they should be used solely for the supply of locomotive fuel. The investment was, as of September 30, 1928, after deb-

---

[1] U S. C., Tit. 49, § 20.

its for depreciation and depletion, $2,650,467.28. The estimate is that the coal in the three mines will be exhausted in seventeen years, thirty-three years, and thirty-five years respectively. The entire output, except for a trifling amount furnished to mine employees, is consumed in carrier activities. The collieries furnish approximately forty-eight per cent. of the railway's requirements.

A general order of the Commission, in force long prior to the company's purchase of the mines, required such assets to be shown under Account 705, "Miscellaneous Physical Property," which included investments in physical property not used in transportation. Since acquisition of the first of the mines the railway has carried the investment in this account. In 1927 the company addressed a letter to the Commission requesting permission to transfer the investment from Account 705 to Account 701, which comprises investment in road and equipment. Thereupon an *ex parte* order was made directing that, as theretofore, the cost of the collieries should appear in Account 705. On petition a hearing was afforded, after which the Commission entered the order now under attack, prescribing that the investment be carried under Account 705, and providing further that the charges to Account 716, "Material and Supplies," for coal produced for consumption in appellant's transportation operations, be upon the basis of the average monthly cost per ton of producing coal; adding that if necessity should appear the proceeding would be reopened for the purpose of considering and further regulating the accounting under which the costs per ton are ascertained.

*First.* The Commission's order is challenged as in excess of the statutory grant of power. The concession is made that § 20 of the Act grants a discretion to prescribe a uniform system of accounts, the manner in which they shall be kept, and the forms thereof. The appellant,

however, asserts that this discretion is limited by the purposes and ends for which such accounts are to be kept, as exhibited in other sections of the Act. Reference is made to the valuation section (19a),[2] which calls upon the Commission to report "the value of all the property owned or used by every common carrier," and specifies in subparagraph (b) that as part of the investigation the Commission shall "ascertain and report in detail as to each piece of property, other than land, owned or used by said common carrier for its purposes as a common carrier . . ." Stress is laid upon the fact that final valuations made by the Commission are to be *prima facie* evidence of the value of the property in all administrative and judicial proceedings under the Act. So also the appellant seeks support for this contention in the fair return and recapture section (15a),[3] which assures to the carrier "a fair return upon the aggregate value of the railway property of such carriers held for and used in the service of transportation," and for recapture of income in excess of a return of six per centum upon the value of such railway property. The phrases employed in these sections,—"in the service of transportation," and "for purposes of a common carrier,"—are said to mark the limits of the statutory power of the Commission in classifying capital assets for accounting purposes.

In view of the uncontradicted fact that the mines in question were purchased for and dedicated to the use of fuel supply and may not be used for any other purpose, the appellant deems it necessarily to follow that these assets were acquired for carrier purposes and are used in the service of transportation, and serve no other purpose or use whatsoever. The conclusion sought to be drawn is that although the Commission may exercise a reasonable discretion in prescribing the nature and form

[2] U. S. C., Tit. 49, § 19a.
[3] U. S. C., Tit. 49, § 15a.

of accounts, it has in the present instance plainly exceeded that discretion and by classifying as non-transportation property that which was acquired to serve transportation activities and promote the purposes of carriage of persons and goods, has transgressed statutory boundaries.

We must examine the origin, the purpose, the re-enactment of the statutory provision, and the practice of the Commission thereunder, to resolve the question thus presented. The authority to require annual reports from carriers and to prescribe a uniform system of accounts was conferred on the Commission by the Interstate Commerce Act of 1887,[4] and was but slightly elaborated in statement by the Hepburn Act and the Transportation Act, 1920.[5] One of the prime purposes of § 20 is and has been since the adoption of the Act of 1887, that the carriers' accounts should be uniform, so as to afford the Commission and the public a basis for comparison of their respective operations. In orders issued pursuant to this legislation the Commission, as early as 1914, drew a distinction, for purposes of accounting, between transportation and non-transportation property. The rule as to classification which appellant attacks had been in force long prior to the passage of the Transportation Act, which added to the law theretofore in effect § 15a, respecting recapture, and prior to the enactment of the Act of March 1, 1913,[6] which added § 19a, concerning valuation, to which appellant turns for the limitations it would have us read into § 20. Moreover, those sections draw the very distinction which the Commission order has long enforced. Section 15a, in referring to the fair return guaranteed the carrier, speaks not of the property as a whole, but of " the

---

[4] Act of February 4, 1887, c. 104, § 20, 24 Stat. 386.

[5] Act June 29, 1906, c. 3591, § 7, 34 Stat. 593; Act February 28, 1920, c. 91, §§ 434–438, 41 Stat. 493, 494.

[6] c. 92, 37 Stat. 701.

*railway property* held and used for the service of transportation." And § 19a commands the Commission to show separately in any report " the property held for purposes other than those of a common carrier."

Plainly, the Commission, under the authority conferred upon it by Congress, must draw a line between the two sorts of property owned by the railroads. Within broad limits that body's determination is necessarily beyond revision and correction by the courts. The record shows that it is unusual for a railroad to own mines for the production of locomotive fuel; in fact we are referred to no other similar instance. Whether the Commission should make special classifications to fit exceptional cases lies within the discretion conferred, and courts ought not to be called upon to interfere with or correct alleged errors with respect to accounting practice. If we were in disagreement with the Commission as to the wisdom and propriety of the order, we are without power to usurp its discretion and substitute our own. *Kansas City So. Ry.* v. *United States,* 231 U. S. 423, 444, 456.

*Second.* With great earnestness the appellant characterizes the order as in several aspects a denial of due process. It declares that by virtue of the Commission's mandate an unfair and improper rate base is fixed, and a capital asset properly to be taken into account for purposes of recapture is eliminated. But this is to ignore the fact that the order is one touching accounting merely; that before any rate base can be ascertained or any basis of recapture determined the carrier will be entitled to a full hearing as to what property shall be included; and not until the Commission excludes the assets in question from the calculation may the carrier assert the infliction of injury to its rights of property. A recapture proceeding is now pending against the appellant, wherein full opportunity will be afforded to present any claims with

regard to the inclusion in whole or in part of the mining properties in question.

We are not convinced by the assertion that the necessary effect of classifying the mines as non-carrier properties is to exclude them from consideration as capital in the issuance of securities. We are not, however, required now to decide this question, for the mere accounting classification can conclude neither the Commission nor the appellant upon the hearing of an application under § 20a (2).[7]

Denial of due process is also predicated upon the assertion that the Commission's order is wholly unsupported by the evidence. Appellant invokes the principle that due process requires not only a hearing, but a fair consideration of the evidence, and says that no effect was given to the uncontradicted testimony. The report demonstrates that the Commission did give painstaking attention to the question of the proper classification of the asset in question by comparison of mines for fuel supply with water rights, gas and power plants, locomotive and car manufacturing plants, timber lands purchased for future supply of ties, and other kinds of property which have been heretofore classified as falling partly or wholly within or without the category of transportation property. The record demonstrates that an adequate hearing was afforded and due weight given to the evidence.

Appellant also characterizes the Commission's action as a denial of the legal right of the railway to adopt fair and reasonable methods of accounting. We have shown that the order made does not affect the right to a fair return, or to determination of the full and fair value of the carrier's entire property and assets, and does not amount to a taking thereof. The objection now under

---

[7] U. S. C., Tit. 49, § 20a (2).

consideration asserts merely that the company is lawfully entitled to maintain a reasonable system of accounting. But there is no right to a particular form of accounting as such. Doubtless a Commission order under § 20 might be so arbitrary and outrageous as to call for correction. The present is not such a case. What has been done clearly does not amount to an abuse of power. See *Kansas City So. Ry.* v. *United States, supra.*

The order is assailed further as an undue and unwarranted interference with managerial discretion. Much is said of the wisdom and far-sightedness of obtaining an adequate supply of a commodity necessary to the continuance of the railway's transportation system. The danger of limiting or hampering railway executives in the exercise of sound discretion and good policy is stressed. But nothing in the order prevents the exercise of such policy. The basis of the Commission's order is merely that if a carrier determines to go into the business of manufacturing articles for use in connection with its activities as a carrier, such as are ordinarily purchased by railroads from independent manufacturers or producers, these shall not appear in the accounts as investments in railway property used in the service of transportation. No benefit derived from such activities is denied the carrier, nor does the required classification in any way take the property of the company or impair its value.

*Third.* Finally, complaint is made of that portion of the Commission's order which requires the charges to Account 716, " Material and Supplies," for coal produced from the collieries for consumption in the appellant's transportation operations, to be upon the basis of the average monthly cost for producing the coal. The objection seems to be grounded on the premise that actual cost of production is not the proper item to go into that account. The Commission, however, expressed a willingness to reopen the case and to give further consideration,

144

if necessary, to the method of charging coal from these mines as a cost of transportation. The record therefore fails to show that in this aspect the appellant has suffered harm from the order.

The judgment of the District Court is

*Affirmed.*

MR. JUSTICE BUTLER took no part in the consideration or decision of this case.