### GREAT NORTHERN RY. CO. v. CENTRAL HANOVER BANK & TRUST CO.
### No. 1038.

District Court, W. D. Washington, N. D.
Dec. 2, 1935.

F. G. Dorety, of St. Paul, Minn., and Thomas Balmer, of Seattle, Wash., for plaintiff.

Bausman, Oldham, Cohen & Jarvis, of Seattle, Wash., and Larkin, Rathbone & Perry, of New York City, for defendant.

NETERER, District Judge.

The plaintiff seeks judicial determination that the defendant as trustee has no lien by reason of a certain mortgage executed by plaintiffs' predecessor, or interest upon certain lands described in the bill of complaint.

The Congress by Act of March 3, 1857 (11 Stat. 195) and Act of July 12, 1862 (12 Stat. 624), Act of March 3, 1865 (13 Stat. 526), granted certain public land to the territory of Minnesota for the purpose of construction of certain railroads therein. On May 27, 1857, the Legislature of the territory of Minnesota by act created the Minnesota & Pacific Railroad, predecessor of the St. Paul, Minneapolis & Manitoba Railway Company, a Minnesota corporation (hereafter designated the Manitoba Company), and bestowed upon it the granted lands. These lands were later acquired by the Manitoba Company with the same conditions as enjoyed by the Minnesota & Pacific Railroad Company. See Farnsworth v. Minnesota & Pacific Railroad Co. et al., 92 U.S. 49, 23 L.Ed. 530. The lands extended into what are now the states of North and South Dakota. After the admission of Minnesota as a state, the Secretary of the Interior, in 1871, held the grant to the lands lying within the territory of the Dakotas of no effect, and the lands were disposed of under the public land laws of the United States.

On December 22, 1890, the Supreme Court held the order of the Secretary of the Interior erroneous (see St. Paul, Minnesota & Manitoba Railway Co. v. Phelps, 137 U.S. 528, 11 S.Ct. 168, 34 L.Ed. 767). The Congress by Act of August 5, 1892 (27 Stat. 390), "for the purpose of relieving the said occupants, improvers and purchasers of the said granted lands from the hardship of being now deprived of the same under the circumstances" (section 1), proposed for selection of lieu lands in equal amount of the public lands in any state into which its railway extended, upon relinquishing the right to the lands in the Dakotas. The Manitoba Company in 1892 and 1894, inclusive, conveyed the Dakota lands to the United States. The plaintiff company and its predecessor selected lieu lands and received from the United States lands which included the lands in issue.

On July 1, 1890, the Manitoba Company owners executed to the Central Trust Company, now the defendant, as trustee, its Pacific extension mortgage, covering, among other things, proposed extension of its lines from the point where its lines then terminated to the Pacific Coast, together with "other lands * * * now

held or owned, or which shall hereafter be in any way acquired, held or owned by the Manitoba Company, its successor or assigns for use in the construction, maintenance or operation of the above described *line of railway,* * * * also all rights privileges, powers, immunities and exemptions and all corporate or other franchises now owned or which hereafter be owned, held or enjoyed by or conferred upon the Manitoba Company its successor or assigns connected with or related to the said railway * * * or to the construction, maintenance or use of same," also "all and singular the railways, rights of way, road-bed, depot grounds, and other lands * * * now held or owned, or which shall hereafter be in any wise acquired, held or owned by the Manitoba Company, its successors or assigns for use in the *construction, maintenance or operation of the * * * line of railway.* * * *"

On November 1, 1907, the Manitoba Company conveyed all of its property to the plaintiff; the latter assuming and agreeing to pay all the bonds outstanding under the Pacific extension mortgage, and to keep and perform all of the covenants stipulated by said mortgage to be kept and performed.

The lands of the Manitoba Company were granted long prior to the acquisition of the lieu lands, and the lieu lands took the status of the granted lands to Minnesota territory, which grant was in præsenti (St. Paul, Minn & M. R. Co. v. Phelps, 137 U.S. 528, 11 S.Ct. 168, 34 L.Ed. 767, Supra), and had no relation to the "Pacific Extension," but only to lines of railway in Minnesota pursuant to its legislative act. And the Act of August 5, 1892 (27 Stat. 390) could not and did not limit the lieu land service; the purpose was clearly set out which was to relieve hardship entailed by settlement upon land granted to Minnesota for construction of railroads therein.

Article 13 of the mortgage reads, "The Manitoba Company for itself, its successors and assigns * * * hereby covenants and agrees to and with the trustee and its successors in trust created by this indenture that whenever and as often as the Manitoba Company, its successors and assigns shall hereafter acquire any property right, franchise or thing whatsoever pertaining to or for *use upon the line of railway hereby* expressed to be granted * * * shall be duly made * * * to the trustee, its successor, or its successors * * * in trust by this indenture created."

The mortgage specifically limits after-acquired property to property acquired for use upon the *line* of railway which excludes all land in issue, except one quarter section acquired for use in connection with the railway line for the erection of snowsheds and protection of the line of railway from snowslides in the Snoqualmie Forest Reserve. This limitation is explicit, and the rule of strict construction of after-acquired property [Cleveland Trust Company v. Consolidated Gas, E. L. & P. Co. (C.C.A.) 55 F.(2d) 211] need not be invoked, but clearly refutes defendant's claim. All other lands are at a distance from the railroad and not a part of the *line of railway,* nor used in connection therewith. The limitation here, it appears to me, is more lucid and clear than in New Orleans Pacific Railway Co. v. Parker, 143 U.S. 42, 12 S.Ct. 364, 36 L.Ed. 66, and Norfolk & Western Railway Co. v. U. S. (D.C.) 52 F.(2d) 967, affirmed 287 U.S. 134, 53 S.Ct. 52, 77 L.Ed. 218; see, also, Great Northern Railway valuation, 133 I.C.C. 1, at page 150; Cleveland Trust Co. v. Consolidated Gas, E. L. & P. Co. (C.C.A.) 55 F.(2d) 211.[1]

The contention of defendant of the application of the rule of practical, continuous construction cannot obtain. There has been no consistent, uniform, harmonious, unambiguous construction of the mortgage (Page on Contracts, 2d and 2034). The one instance urged by the defendant is not within the rule. Throughout this transaction, the respective parties insisted on the construction here asserted, but because of the expedience the plaintiff acceded to the request of the defendant and furnished the proofs of value and supplemental indenture for the exchanged lands, but in writing protested the right thereto.

[1] Meyer v. Johnston, 53 Ala. 237; Id., 64 Ala. 603; Boston & N. Y. A. L. Co. v. Coffin, 50 Conn. 150; Mississippi Valley Co. v. Chicago, St. L. & N. O. R. Co., 58 Miss. 846; Eldridge v. Smith, 34 Vt. 484; Citizens' Savings, etc., Co. v. Cincinnati, etc., Traction Co., 106 Ohio St. 577, 140 N.E. 380; Walsh v. Barton, 24 Ohio St. 28; Aldridge v. Pardee, 24 Tex. Civ.App. 254, 60 S.W. 789; Dinsmore v. Racine, etc., R. Co., 12 Wis. 649.

The defendant received no right or benefit not provided for in the mortgage. The land received by the plaintiff was for use in the *maintenance* and *operation* of *the line of railway.* The cases cited by the defendant, Central Trust Co. of New York v. Kneeland, 138 U.S. 414, 11 S.Ct. 357, 34 L.Ed. 1014; Old Colony Trust Co. v. City of Tacoma (D.C.) 219 F. 775; Guaranty Trust Co. of New York v. Atlantic Coast Electric Railway Co. (C.C.) 132 F. 68, affirmed (C.C.A.) 138 F. 517, have no application; the citation without analysis or distinguishing, I think, will suffice.

Decree for plaintiff, except as to the quarter section acquired for use of snowshed purposes and included in the supplemental indenture. (All italics supplied.)