## AMERICAN TELEPHONE & TELEGRAPH CO. et al. v. UNITED STATES et al.

District Court, S. D. New York.
Feb. 18, 1936.

C. M. Bracelen, Chas. T. Russell, Edward L. Blackman, and Alan J. McBean, all of New York City, for plaintiffs Eastern Telephone & Telegraph Co. and others.

Allen T. Klots and Hayden N. Smith, both of New York City (Winthrop, Stinson, Putnam & Roberts and G. Schuyler Tarbell, Jr., all of New York City, of counsel), for plaintiffs Ohio Associated Telephone Co. and others.

Harold F. Collins, Sp. Asst. to the Atty. Gen., and Albert E. Stephan and W. D. Humphrey, both of Washington, D. C. (Hampson Gary and Frank Roberson, both of Washington, D. C., of counsel), for Federal Communications Commission.

Clyde S. Bailey and John E. Benton, both of Washington, D. C., for National Ass'n of Railroad & Utilities Commissioners.

Charles G. Blakeslee, of Binghamton, N. Y., for Public Service Commission of New York.

Before MANTON and HAND, Circuit Judges, and KNOX, District Judge.

MANTON, Circuit Judge.

Plaintiffs, common carriers of communication by wire, file this bill under the Urgent Deficiencies Act, October 22, 1913, c. 32, 38 Stat. 208, 219, made applicable by section 402 (a) of the Communications Act (June 19, 1934, c. 652, § 402 (a), 48 Stat. 1093, 47 U.S.C. § 402 (a), 47 U.S.C.A. § 402 (a). They seek to restrain the Federal Communications Commission from enforcing its Order No. 7–C issued June 19, 1935, and effective January 1, 1936, to govern the system of accounts for telephone companies engaged in interstate commerce and having average annual operating revenues exceeding $50,000. A temporary stay was granted pending decision on the permanent injunction. The issues are submitted for final

determination on affidavits and the arguments thereon.

The accounting system now in operation was promulgated by the Interstate Commerce Commission as the "Uniform System of Accounts for Telephone Companies, First Revised Issue," effective from January 1, 1933. Upon objections by 22 state commissions, the Interstate Commerce Commission had taken under advisement suggested changes in this 1933 system. Its inquiry ended very shortly before jurisdiction over telephone companies was transferred to the Federal Communications Commission created by the Communications Act of June 19, 1934 (section 1 [47 U.S.C.A. § 151]). In view of this fact, the Interstate Commerce Commission, although it issued no order, rendered a report of the proceedings before it for the convenience of the incoming Commission (Accounting Rules for Telephone Companies, 203 I.C.C. 13). In this report, some of the matters now objected to were discussed and disapproved. The Communications Commission, after supplemental investigation, hearings, and conferences, did not follow the Interstate Commerce Commission in its disapproval of these provisions and incorporated them in the system now under review. The National Association of Railroad and Public Utility Commissioners, which claims to represent the commissions having jurisdiction over telephone companies in 46 states, has indorsed the proposed system and has appeared in this case by intervening as a party defendant. In addition, the New York State Public Service Commission pleads for the order as amicus curiæ.

The attack on the order requiring the uniform system of accounts is based upon the claim that it is invalid because it violates the Fifth Amendment to the Constitution and section 404 of the Communications Act, 47 U.S.C.A. § 404, (a) since it is unsupported by a report stating conclusions and basic findings; (b) the requirements exceed the statutory power of the Commission and are so contrary to the fundamental principles of correct accounting as to constitute an abuse of that power in so far as they treat of original cost, contributions, certain classifications of telephone plant and depreciation thereon, and just and reasonable charges; (c) amendments in requiring obedience to standards so vague and indefinite as to be unintelligible, or violate the Fifth and Sixth Amendments.

Before other discussion, it should be settled that the order is not void for lack of a report stating the conclusions and findings of fact by the Commission. Section 220 (a) of the Communications Act (47 U.S.C.A. § 220 (a) provides: "The Commission may, in its discretion, prescribe the forms of any and all accounts, records, and memoranda to be kept by carriers subject to this chapter."

There is an identical provision in the Interstate Commerce Act, § 20 (5), 49 U.S.C.A. § 20 (5). When a system of accounts is laid down under these sections, the action is a legislative, rather than a judicial, function. It is making a new rule to be applied in the future, not applying an already existent rule to past facts. This is the characteristic of legislation. See Keller v. Potomac Electric Power Co., 261 U.S. 428, 440, 43 S.Ct. 445, 67 L.Ed. 731; Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150. And to claim that findings are essential to support this order is to ignore this difference. Assigned Car Cases, 274 U.S. 564, 583, 47 S.Ct. 727, 71 L.Ed. 1204. An administrative body can exercise a delegated legislative function without first reporting the data upon which it decided that the proposed rule should be established. Pacific States Box & Basket Co. v. White, 56 S.Ct. 159, 80 L.Ed. ——. Since the Commission is authorized to act "in its discretion," there is no requirement that it find the facts upon which its authority to act is conditioned as in Atchison, Topeka & Santa Fe Ry. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382; United States v. Chicago, Milwaukee, St. Paul & Pac. R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023; United States v. Baltimore & Ohio R. R. Co., 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587. The case last cited points out the difference, 293 U.S. 454, at page 462, 55 S.Ct. 268, 272, 79 L.Ed. 587. In holding an order void for lack of a finding on a jurisdictional fact, the court said: "The act [Boiler Inspection Act] does not confer upon the Commission legislative authority to require the adoption on locomotives of such devices as, in its discretion, it may from time to time deem desirable."

Section 220 (a) conferring power to prescribe the accounting system does confer upon the Commission power to act in its discretion.

Nor does section 404 of the act (47 U.S.C.A. § 404) render an order under section 220 (a) void if a report is lacking. Section 404 provides: "Whenever an investigation shall be made by the Commission it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises; and in case damages are awarded, such report shall include the findings of fact on which the award is made."

This section requires findings of fact only in the event damages are awarded. The order No. 7–C does not award damages. Although the Commission, as outlined above, did extensive preliminary work before entering the order, a report of its conclusions is not a condition to the order's validity. The conclusions of the Commission are very evident from the order itself.

In support of this position, there is the fact that section 404 and section 220 (a) of the Communications Act are identical with section 14 (1) and section 20 (5) of the Interstate Commerce Act, 49 U.S.C.A. §§ 14 (1), 20 (5). It has not been. the practice of the Interstate Commerce Commission to preface its general accounting orders with reports, and the incorporation of these sections in the Communications Act is an indication that Congress approved this administrative interpretation. See McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 492, 493, 51 S.Ct. 510, 75 L.Ed. 1183; National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496.

[6] The Communications Act made the judicial procedure applicable in proceedings to enforce or test the validity of the Communications Commission orders similar to like proceedings affecting the orders of the Interstate Commerce Commission (section 402 (a). We must, therefore, in reviewing this order, be guided by the rule that in respect to orders of the Commission, the court may not "under the guise of exerting· judicial power, usurp merely administrative functions by setting aside a lawful administrative order upon our conception as to whether the administrative power has been wisely exercised." Interstate Commerce Comm. v. Illinois Central R. R. Co., 215 U.S. ·452, 470, 30 S.Ct. 155, 160, 54 L.Ed. 280. See Interstate Commerce Comm. **v.**

Union Pacific R. R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. It is not enough to reason that the order is unwise, inexpedient, or at variance with the court's own views as to what is practicable. This rule guides judicial review of any legislative act. Chicago, Burlington & Quincy R. R. Co. v. McGuire, 219 U.S. 549, 569, 31 S.Ct. 259, 55 L.Ed. 328.

We have already pointed out that the order prescribing a uniform system of accounts is of a legislative character. When section 20 (5) of the Interstate Commerce Act was before the Supreme Court in Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S.· 194, at page 214, 32 S.Ct. 436, 441, 56 L.Ed. 729, and Kansas City Southern Railway Co. v. United States, 231 U.S. 423, 34 S.Ct. 125, 58 L.Ed. 296, 52 L.R.A.(N.S.) 1, the court, while characterizing the Commission's power as legislative, also held it not unlawfully delegated, saying: "The Congress may not delegate its purely legislative power to a commission, but, having laid down the general rules of action under which a commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making orders in a particular matter within the rules laid down by the Congress."

And referring to section 20, said: "The Commission is permitted, in its discretion; to require a uniform system of accounting, and to prohibit other methods of accounting than those which the Commission may prescribe. In other words, Congress has laid down general rules for the guidance of the Commission, leaving to it merely the carrying out of details in the exercise of the power so conferred. This, we think, is not a delegation of Legislative authority."

No Commission accounting order is to be reviewed judicially for the purpose of determining whether it conforms to the court's views as to what constitutes proper, efficient, practical accounting methods, but it is for the court to say only whether the Commission has acted within statutory and constitutional limits. See Norfolk & Western R. R. Co. v. United States, 287 U.S. 134, 143, 53 S.Ct. 52, 77 L.Ed. 218.

Therefore, our inquiry as far as it goes beyond a consideration of power with-

in the statute is merely whether the order is "so entirely at odds with fundamental principles of correct accounting as to manifest an abuse of power." See, Chesapeake & Ohio Ry. Co. v. United States, 5 F.Supp. 7, 14 (D.C.E.D.N.Y.).

■ Section 213 (c), Communications Act of 1934 (47 U.S.C.A. § 213 (c), in specific terms authorized the Commission to obtain from telephone carriers at any time information concerning original cost of their properties which may be needed for rate-fixing purposes. And it is asserted by plaintiffs that this section is the full measure of the Commission's authority to require information as to original cost, and that an order under section 220 (a) requiring data in respect of original cost to be kept in a system of accounting may not be prescribed. Section 220 (a) authorized the Commission in its discretion to "prescribe the forms of any and all accounts, records, and memorandum to be kept by carriers." The powers conferred by section 213 (c) are not restrictive of section 220 (a), nor does the latter section restrict the former. The two sections are capable of complementary treatment.

■ The requirement that original cost be set forth in accounting records of the telephone companies serves to complete the picture of value in revealing the property's financial background and showing the relationship of a carrier's monetary return to the original as well as to its own investment. It aids the Commission in its duty to determine, from all the pertinent circumstances and factors, the just and reasonable rates which the carrier may exact from its service. Original cost is a relevant factor. Smyth v. Ames, 169 U.S. 466, 547, 18 S.Ct. 418, 42 L.Ed. 819; Los Angeles Gas & Elec. Corp. v. R. R. Comm., 289 U. S. 287, 306, 53 S.Ct. 637, 77 L.Ed. 1180, cf. section 213 (a) of the act (47 U.S.C.A. § 213 (a). The object of the system of accounts might well be to display the pertinent financial operation and throw light upon its present condition. Kansas City Southern Ry. v. U. S., supra, 231 U.S. 423, at page 440, 34 S.Ct. 125, 58 L.Ed. 296, 52 L.R.A.(N.S.) 1. Original cost as a segregated item on a balance sheet may serve to reveal actualities which may be pertinent in fixing a rate base on the capitalized earning power of a property purchased. In making readily available facts which would tend to expose discrepancies in valuation, it cannot be said the system is so arbitrary as to be beyond the Commission's power. Forty-seven state public utility bodies acquiesce in the proposed requirements. This is not evidence of unreasonableness.

■ The new system requires that when telephone plant in service is acquired, the amount paid therefor shall be charged to account 276 (telephone plant acquired). The original cost of the property, estimated if not known, shall then be charged (debited) to the appropriate telephone plant account, whether "in service" (100.1), "under construction" (100.2), or "held for future use" (100.3), and credited to account 276. After debits to 276 for "contributions," and for reserve requirements for depreciation and amortization to date of the plant acquired, the amount remaining in 276 shall be debited or credited as appropriated to account 100.4 (telephone plant acquisition adjustment). As to 100.4, the system provides: "The amounts recorded in this account with respect to each property acquisition shall be disposed of, written off, or provision shall be made for the amortization thereof in such manner as this Commission may direct [100.4 (c)]." "Original cost" as used, is defined as: "The actual money cost of or the current money value of any consideration other than money exchanged for property at the time when it was first dedicated to the public use, whether by the accounting company or by a predecessor public utility." Instruction 3–S–1.

The plaintiffs direct at this requirement the objection that these provisions violate the fundamental principles of accounting in the following respects: Although 100.1, 100.2, 100.3, and 100.4 if added together immediately will show the company's actual investment in its plant, since 100.4 must be written off at the will of the Commission, it will be necessary to carry a surplus reserve against this possible write-off. Once the write-off has been made, they declare that no combination of balances will reflect the company's actual investment. And they object, further, because there can be no depreciation charge to any amount in account 100.4.

In considering the merits of these objections, it becomes necessary to examine, for purposes of comparison, the system

now in effect which the plaintiffs do not attack as unreasonable and which they seek to retain. Under the present system, account 276, "undistributed cost of property," performs a function similar to account 100.4. Under it, when a purchase is made, the estimated current value of the land, the current cost new (estimated if not known) of certain other telephone plant, the original cost of franchises, and the cost of uncompleted projects are charged to their corresponding accounts. After crediting to reserve accounts the estimated depreciation and amortization applicable, the difference between the total of the foregoing amounts and the cost to the accounting company of the plant acquired is debited or credited to 276, "undistributed cost of property." Account 276 is classed as a "telephone plant account," and is reported in the balance sheet as part of account 100 (telephone plant).

As an alternative, the Commission may permit the transfer of the amounts in the "telephone plant accounts" and in "depreciation and amortization reserve accounts" as carried in the books of the vendor company to the books of the purchaser. In some instances, the amounts actually paid by the purchasing companies have been recorded in the "plant" accounts. Thus, actual cost, current cost new at the time of purchase, and original cost at the time of first dedication are in use at present as the bases of various telephone plant accounts. The amount in 276 of the present system is subject to no depreciation and may be written off only through surplus.

On a comparison of the two systems, that of this Commission seems to more accurately reflect the condition and record the history of the plant. Account 100.4 is listed among investments. It can be subdivided so that there can be segregated any amount therein not representing (1) the cost of elimination of competition; (2) payment to an affiliate at a price in excess of cost to it with a profit returnable to the purchasing company in the form of dividends or otherwise; and (3) any other element not expended in public interest.

This segregated amount would receive the same treatment substantially in the rate and depreciation basis as would amounts appearing in 100.1 "Telephone plant in service." In this light it appears that the proposed system merely provides segregation, and that the addition of the amounts in these investment accounts 100.1 through 100.4 would accurately picture the legitimate investments of the purchasing company.

To follow the plaintiffs in their argument that a reserve of surplus must be maintained against 100.4 and that this is fundamentally wrong, would be to ignore the similarity between 276 of the present system and 100.4 of the proposed system, and, further, it requires the assumption that the Commission will act improperly in the future under 100.4 (c). This cannot be presumed. The order provides for alternatives adaptable to the facts of individual cases. This flexibility distinguishes the system at bar from that held invalid in New York Edison Co. v. Maltbie, 244 App.Div. 685, 281 N.Y.S. 223. This cannot be held, before any order under 100.4 (c) has been made by the Commission, to be such an arbitrary method of accounting that the order imposing it is void.

The same argument applies to the objection that no depreciation is allowed against item 100.4, "acquisition adjustments." This complaint anticipates arbitrary action by the Commission, under 100.4 (c), which authorizes handling of this item through amortization. The effect would be the same as writing down through depreciation, and until the Commission acts so that the accounts become so contrary to the principles of correct accounting as to constitute the Commission's order arbitrary and unreasonable, the Commission is within its powers. The court need not agree the accounting proposed is the best method, but at this stage it cannot be said the provision is arbitrary. The objection is made that the Commission's refusal to act properly within 100.4 (c) would constitute a negative order, nonreviewable within the doctrine of Proctor & Gamble Co. v. United States, 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091. This would not cut off the plaintiffs' right of attacking the system as it would apply to them after such a refusal. The appeal need not be on the order denying relief, but can be against the system as its operation is affected by such denial.

There is no deprivation of property involved here. The Supreme Court has noted that the question merely concerned accounting, and that there was no

occasion to hold the order invalid as a deprivation of property until actual damage was threatened by it as in the use of an improper rate base in setting rates. Norfolk & Western Ry. Co. v. United States, 287 U.S. 134, 53 S.Ct. 52, 77 L.Ed. 218; United States v. Los Angeles & Salt Lake R. R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651.

The plaintiffs object that no depreciation is allowed on property held for future use in account 100.3. Except in these rare instances when the entire cost of depreciation covers only the wear and tear on equipment in use, the plant held in reserve will depreciate because of obsolescence or deterioration, as it is not entirely dependent on use. The exclusion of depreciation on this account as an item to be considered in rate determinations may be supportable but it appears unjustifiable to bar depreciation on this item altogether. Where the property is withdrawn from service for any portion of its life, upon its final retirement, the depreciation reserve set up for it would be inadequate. This can be adjusted by charging the depreciation to surplus rather than as a current account. Thus a true reflection of the adjusted value of the property would be obtained, and yet the accounts will so set off the item that it may be excluded from consideration as a current expense for rate purposes.

Instruction 21 (B) (3) directs a purchaser of property, which has been acquired by the prior owner as a contribution, to record the contribution which the seller had received. This is done by crediting account 175, "contributions of telephone plant," and debiting the same amount on the asset side, to account 100.4, "Telephone plant acquisition and adjustment." Instructions 21 (B) (4). Since this requirement is in addition to the usual entries covering the purchase, it results in swelling the assets and liabilities by a fictitious entry. It constitutes a double recording of this portion of the transaction. This part of the property is recorded once in the usual record of the transaction, and to require its inclusion a second time is unreasonable. No sufficient reason is advanced for such treatment. The desired record could be made without this inflation by a subdivision of account 100.4. It is unreasonable to require duplication, and the plaintiffs are injured in so far as they are denied a reasonable and true accounting record by this provision.

Instruction 2 (b) (1) is also objected to. It provides: "All charges to the accounts prescribed in this classification for telephone plant, income operating revenues, and operating expenses, shall be just and reasonable and any payment by the company in excess of such just and reasonable charges shall be included in account 323 Miscellaneous income charges."

The information this requirement makes available is essential to any determination of reasonable rates within section 201 (b) of the act, 47 U.S.C.A. § 201 (b) (section 1 (4, 5) of the Interstate Commerce Act, 49 U.S.C.A. § 1 (4, 5), since they are directly affected by such charges. In the present system, instruction 22 (10) (a) stipulates that the telephone plant accounts be charged with "reasonable amounts for interest during construction period." The concept is no more indefinite there than the one more widely applied in the proposed system. The idea of "reasonable" is old in the fixation of public utility rates and every rate determination involves consideration of charges here made subject to a distinction between reasonable and unreasonable. Although in isolated cases the question may be very close, generally the classification will not be impossible. As an accounting measure merely, the rule cannot be regarded as beyond the Commission's power.

Exception is also taken to the rule as requiring obedience to a standard as vague and indefinite as to be unconstitutional within the doctrine announced in United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045, Tedrow v. A. T. Lewis & Son Dry Goods Co., 255 U.S. 98, 41 S.Ct. 303, 65 L.Ed. 524, and A. B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589. First, it appears that the requirement that profits on transactions involving necessaries should not be unjust or unreasonable is without the specialized content of the word "reasonable" with regard to charges involved in the determination of rates. This serves to distinguish the plaintiffs' other cases. Cf. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146; Champlin Refining Co. v.

Oklahoma Corp. Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403. Second, telephone companies need incur no risk since those occasional cases which may be doubtful can be submitted for approval under section 220 (g) of the act (47 U.S.C.A. § 220 (g) and instruction 9 of the order. To the claim that the Commission is likewise without a standard for judgment, the answer is that the concept of "reasonable" is traditionally defined in utility regulation with sufficient certainty.

The necessity of this order becomes apparent upon consideration of the interrelations of telephone companies. License agreements between subsidiaries can furnish examples of charges clearly not "just and reasonable." Yet any exact definition would be objectionable as arbitrary.

Furthermore, these items, in being subject to interpretation by the Commission and definition as applied to specific facts, are sufficiently definite to guide the Commission. Cf. Pennsylvania Co. v. United States, 236 U.S. 351, 361, 35 S.Ct. 370, 59 L.Ed. 616; Interstate Commerce Comm. v. Alabama Midland Ry. Co., 168 U.S. 144, 170, 18 S.Ct. 45, 42 L.Ed. 414.

It is required that the capital stock expense be set up in account 134.2 which falls in the general class of "Prepaid Accounts and Deferred Charges." 134.2 (c) provides that the amortization of this account shall be accomplished by charges to "Miscellaneous debits to surplus." Instruction 20 (a) states that the telephone plant accounts, 201–277, shall include the general expense of organization of the accounting company. While the system may appear to be inconsistent in this respect, Montgomery v. Auditing Theory & Practice (5th Ed.1934) p. 416, indorses the write-off of organization expenses to charges against earned surplus, and this would be not unreasonable in view of the accountant's differences on the point. See Paton Accountant's Handbook (2d Ed.1934) p. 42.

If inconsistency exists, it may be corrected by the Commission before this requirement can be enforced. What we say must not be regarded as an indorsement of the indiscriminate exclusion of these expenses from the rate base. See Ohio Utilities Co. v. Public Utilities Comm., 267 U.S. 359, 45 S.Ct. 259, 69 L.Ed. 656. Nor does it mean that expenses of stock flotations subsequent to organization are always necessarily to be regarded as organization expenses.

Except as indicated herein in connection with the depreciation for plant and equipment held for future use, and contributions, the injunction herein prayed for must be denied, but a decree will be entered restraining the enforcement of the instructions given as to those two items.

A decree for plaintiffs, as limited in this opinion, may be entered.