In the Matter of the Application of THE NEW YORK EDISON COMPANY and Thirty-seven Others, Petitioners, for Certiorari Orders against MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, and the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondents. (Consolidated Proceedings.)

Third Department, June 27, 1935.

For the petitioners:

*Shearman & Sterling* [*Jacob H. Goetz, William L. Ransom, Richard Joyce Smith* and *Henry S. Reeder* of counsel], for the Consolidated Gas Company of New York and its affiliated gas, electric and steam companies.

*Cullen & Dykman* [*Jackson A. Dykman, Sigourney B. Olney* and *George A. Wood* of counsel], for the Brooklyn Union Gas Company.

*Henry R. Frost* and *Elmer B. Sanford* [*Jacob H. Goetz, William L. Ransom, Richard Joyce Smith* and *Edward J. Crummey* of counsel], for the Long Island Company and its affiliated gas and electric companies.

*LeBoeuf, Winston, Machold & Lamb* [*William A. Winston* and *Chauncey P. Williams* of counsel], for the Antwerp Light and Power Company and others.

*Edmund B. Naylon* [*Jesse J. Holland* of counsel], for the New York State Electric and Gas Corporation and others.

*Elton H. Beals,* for the Rockland Light and Power Company.

*Whitman, Dey & Nier* [*Earl L. Dey* of counsel], for the Rochester Gas and Electric Corporation.

*Whitman, Ransom, Coulson & Goetz* [*Jacob H. Goetz, William L. Ransom, Richard Joyce Smith* and *Henry S. Reeder* of counsel], for the Brooklyn Borough Gas Company and others.

*Cravath, de Gersdorff, Swaine & Wood* [*Edward S. Pinney* and *Chester J. Gerkin* of counsel], for the Binghamton Gas Works and another.

*LeRoy T. Harkness* [*Daniel J. Kenefick* and *Edgar A. Martin* of counsel], for the Jamaica Water Supply Company.

*Wherry & Wight* [*James C. Forsyth, Russell H. Neilson* and *William M. Wherry* of counsel], for the New York Water Service Corporation and others.

*Neile F. Towner,* for the Consolidated Water Company of Utica.

*DeForest, Cullom & Elder* [*Oliver H. Payne* of counsel], for the Spring Valley Water Works and Supply Company.

*Charles G. Blakeslee* [*John J. Donohue* and *John T. Ryan* with him on the brief], for the respondents.

HILL, P. J.   Thirty-eight petitioners, each a public utility corporation engaged in the sale or distribution of electric energy, gas, steam or water, have obtained orders of certiorari at the Special Term of Albany county to review the acts, determinations and proceedings of the Public Service Commission in connection with orders made on November 23, 1933, June 26, 1934, and June 30, 1934, revising the uniform system of accounts now in effect in the State of New York under earlier orders of the Commission. The proceedings were consolidated under a stipulation, one return filed and one record presented in this court.   A motion was made to dismiss the certiorari proceedings upon the ground that the orders of the Commission being legislative acts and departmental administrative regulations, did not invade petitioners' constitutional or other rights.   The motion was denied with leave to renew when the entire record was presented (242 App. Div. 874).   It has been renewed.   If these orders are fairly and reasonably within the grant of power constitutionally conferred by the Legislature, they are not open to judicial review.   (*Kansas City So. R. Co.* v. *United States*, 231 U. S. 423, 456; *Interstate Commerce Comm.* v. *Goodrich Transit Co.*, 224 id. 194, 216.)   If the Commission has assumed prerogatives not granted it or has abused the power granted by the Legislature and has made orders that are arbitrary or which deprive the petitioners of constitutional rights, the court has the power of review.   (*Norfolk & Western R. Co.* v. *United States*, 287 U. S. 134, 142.)   The Legislature granted to the Commission power to prescribe uniform methods of keeping accounts, records and books (Public Service Law, § 66, subd. 4).   The statute does not authorize the Commission to prescribe uniform methods of management of the business of privately owned corporations.   The uniformity that may be enforced is not as to what shall be done or how it shall be done, but as to book entries in respect to whatever is done.   (*Kansas City So. R. Co.* v. *United States, supra*, 450.)

One of the new requirements to which objection is made is the breaking up, reallocating and redistributing of present fixed capital accounts.   The Commission's order directs "that each   *   *   * corporation shall immediately proceed to redistribute the balances in its fixed capital accounts so as to bring the classification of such property into conformity with the operating property or other

accounts prescribed in this system of accounts." The uniform system of accounts in addition to hundreds of numbered instructions and accounts, contains forty-two numbered definitions. The " operating property accounts " is described in instruction 21. This provides, in part: " Amounts chargeable to operating property accounts shall be the reasonable and necessary cost of property constructed or installed by the accounting company and the original cost (see definition 31) of operating property acquired from a predecessor public utility." I quote definition 31, " ' Original cost ' means the actual money cost (or the current money value of any consideration other than money) of property at the time when it was first devoted to the public service, whether by the accounting company or by a predecessor public utility." Account 143 is entitled, " Suspense to be amortized." This account, as required by the first paragraph of the instructions in relation thereto, is to " include losses in service value of property retired from causes for which provision has not been made in the depreciation reserves and losses from retirements which could not reasonably have been foreseen and provided for." It " shall also include any excess cost to the company of property purchased over the amount which is determined by the commission " to be the amount which the property cost the first public utility owner. The ultimate disposal of items placed in this account is shown by the last paragraph of the instructions. " Charges shall be made to this account only upon order of the Commission and shall be written off over such period and in such manner as the Commission may by order prescribe." To interpret, if it be needed, there would be no change in the capital account as to " cost of property constructed or installed by the accounting company," but as to property " acquired from a predecessor public utility " there would be included in the fixed capital account, " the actual money cost (or the current money value of any consideration other than money) of property at the time when it was first devoted to the public service * * * by a predecessor public utility." The difference as determined by the Commission between the cost to the predecessor and the price paid by the reporting company would be charged off, after a temporary rest in the account entitled " suspense to be amortized." The " rest " in the suspense account could be brief or lengthy, dependent upon the will of the Commission, this because the only charges that may be made to the suspense account are those ordered by the Commission and the amount thereof " shall be written off over such period and in such manner as the Commission may by order prescribe." " The power vested in the Commission to prescribe uniform methods of keeping accounts and records

(Pub. Serv. Law, § 66, subd. 4) does not include the power to compel a corporation to write off from its book value a loss which it has not sustained, or to give up a part of its constitutional rights. If, as has been said, ' the actual cost of the property — the investment the owners have made — is a relevant fact ' (*Los Angeles Gas & Elec. Corp.* v. *Railroad Comm.*, 289 U. S. 287, 306), a corporation cannot be compelled to make entries upon its books calculated to conceal such relevant fact. It follows that the Commission had no power to impose such condition." (*People ex rel. Iroquois Gas Corp.* v. *Public Service Commission*, 264 N. Y. 17, 21.) The foregoing was written concerning a condition which the Commission sought to impose as to the purchase of the property of one utility corporation by another. If it lacks power as to one transaction, it also lacks power to enforce by a general rule such a condition as to all similar transactions.

No proof was offered by the Commission as to the reason or necessity for the requirement that a part of the purchase price of many items of property should be transferred from the fixed capital account to a suspense account from which they were to be charged off when directed by the Commission. The only persuasive argument advanced by counsel for the Commission as to the necessity for the rule was that property purchased by operating or subsidiary companies had been resold to the holding or parent company at an increased price, and this increased and inflated price placed in the fixed capital account of the holding or parent company. The Commission already had control of entries reflecting these wash sales, and the authority to require their elimination from a fixed capital account. (*Matter of New York State Electric & Gas Corp.* v. *Maltbie*, 243 App. Div. 655; motion for leave to appeal denied, 267 N. Y. xxxix.) It may desire information to enable it to proceed against corporations which it believes have inflated entries in their fixed capital accounts through inter-company transactions, and in connection therewith, information as to original cost to the predecessor utility corporation. It could require that these facts be recorded in an account or memorandum disconnected from the fixed capital account, and thus avoid the unconstitutional requirement that losses which had not been suffered be shown on the books. The petitioners argue, and with high judicial authority, that the books of a utility corporation are not kept solely for the information or benefit of the Commission; that stockholders, bond owners, the investing public and ratepayers are interested; also that corporate financing is done upon the basis of book values. (*Norfolk & Western R. Co.* v. *United States*, 52 F. [2d] 967.) That to be required to show a loss on the books when none has been suffered

is arbitrary. Many of the fixed capital accounts ordered to be redistributed contain entries reflecting purchases from predecessor utilities that were approved by the Commission and other entries concerning consolidation and purchases which have been approved by courts, including the Supreme Court of the United States. These entries are not made upon the basis of "original cost" as the Commission now seeks to define it. Financing has been carried on and transactions made on the basis of these figures as to fixed capital. A requirement that a part now be charged off is confiscatory.

Petitioners also complain that the order requires each corporation to adopt the "straight line" depreciation method in connection with the setting up of depreciation reserves. Definition 39, "'Straight line method' as applied to depreciation accounting means the plan under which the service value (see definition 38) of property is charged to operating expense or other accounts and credited to the depreciation reserves through equal monthly charges as nearly as may be during its service life." I quote definition 38 to which reference is made: "'Service value' means the difference between the book cost (see definition 5) and the net salvage value (see definition 23) of operating property." I quote definition 5 referred to: "'Book cost' means that amount at which property is recorded on the books of the company without deduction of related reserve or reserves." I quote definition 23 mentioned in definition 38: "'Net salvage value' means the salvage value (see definition 36) of property retired after deducting the cost of removal." I quote definition 36 referred to: "'Salvage value' means the amount received for property retired, if sold, less any expenses incurred in connection with such sale or in preparing the property for sale; or, if retained, the amount at which the material recovered is chargeable to account 123, Materials and Supplies, or other appropriate account." By instruction 8 the company is required to estimate the probable length of time during which each item of its property now owned will be usable in the public service and, whenever a new item is acquired, a like estimate must be made. In making this estimate, the Commission requires "a study of the company's history and experience, the history and experience of other companies of a similar character and such engineering and other information as may be available in respect of probable future conditions." If I may attempt translation if it be needed, after estimating the probable usable life in months of an item, the estimated junk value less the estimated cost of removal is deducted from the known cost of the item and the remainder is divided by the estimated number of months the

item will be used. The quotient will be charged to each month's operating expense and credited to the depreciation reserve account. If one wished to know the value of property according to the books of the corporation upon which a return may be asked from consumers, the depreciation reserve is deducted from the fixed capital account. [With the Commission's present broad powers to fix temporary rates, increased consideration will be given to these book accounts in determining the temporary rate base. Thus the method of computing depreciation and the setting up of a reserve to compensate is of vital concern not only to the corporation but to the rate-payer. The amount of depreciation is charged to operating expenses which the consumer must pay. The corporation is concerned because if an erroneous method is used and too great a reserve set up, which must be deducted from fixed capital, the rate base is affected adversely; and if the reserve be too small, not enough will have been collected from consumers to compensate for the property worn out in their service. From the record and argument it appears that some utilities can and do adopt the straight line method. Telephone companies, by experience, know the average life of poles, wire, cable and switch boards, while the life of iron pipe used by water and gas companies is dependent upon the nature of the soil in which it is buried. In a hospitable soil the life is measured by the ages — in an acid soil or in one impregnated with a destructive chemical, the life is relatively short. This is but one of many possible examples of uncertainty. Thus the petitioners argue that depreciation is a matter individual to each company,. and requires business acumen and judgment; that it is a managerial problem which should not be controlled by .the uniform system of book-keeping established by the Commission.

A witness, member of the executive committee of Henry L. Doherty & Co., a holding company controlling about one hundred and thirty operating utility companies doing business in twenty-two States, who fixes the depreciation reserves for that entire system, epitomizes the problem in his testimony: " I endeavor to keep somewhere from eight to twelve per cent on a utility property in a retirement reserve. In other words, that is an amount that would carry you for three or four years under some very drastic retirement programs. With a consideration of all of these questions, with a knowledge of the property, I determined what in good business judgment, under the earnings situation, under the financial situation, would be an amount to be set up for that particular year. Those studies are made every year, and my opinion changes from time to time with the added information that I get. A retirement reserve that is adequate to replace a

property when copper has a five cent base would not be adequate to replace it when copper has a twenty-one cent base." The brief of counsel calls attention to the refusal of the Legislature in both 1930 and 1931 to enact a statute granting the power now sought to be exercised by the Commission under subdivision 4 of section 66. The failure by the Legislature to adopt the statute indicates a legislative intent not to grant the broad powers which the Commission here seeks to exercise.

The " straight line " method of computing depreciation has been disapproved by the Supreme Court of the United States:

" There is deducted approximately 25 per cent of estimated cost new to cover accrued depreciation. The deduction was not based on an inspection of the property. It was the result of a ' straight line ' calculation based on age and the estimated or assumed useful life of perishable elements. * * * The testimony of competent valuation engineers who examined the property and made estimates in respect of its condition is to be preferred to mere calculations based on averages and assumed probabilities." (*McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400, 416.)

" ———————— [an expert witness] figured a ' straight line ' depreciation of $3,500,000 for all plants and holders. This was necessarily a conjecture, based upon the supposed life of the plant; it has no application while the plant is kept up." (*Consolidated Gas Co. of New York* v. *Newton*, 267 Fed. 231, 265.)

The Legislature has not granted the Commission power to fix the method of setting up depreciation reserves. The order in this regard is *ultra vires*.

Account 142, " Capital Stock Expense." " A. This account shall include all expenses in connection with the issuance and sale of capital stock. B. When any issue of capital stock, or a portion thereof, has been superseded or cancelled, there shall be credited to this account and charged to account 514, Miscellaneous Debits to Surplus, the balance herein in respect of such superseded or cancelled stock. C. The company may amortize the balance carried in this account by credits hereto and concurrent charges to account 460, Miscellaneous Deductions from Income." Expenses for taxes, printing, legal services and underwriting in connection with a stock issue, have been held to be elements of value on which a utility corporation is entitled to receive a return. (*Ohio Utilities Co.* v. *Public Utilities Commission*, 267 U. S. 359, 362.) The order in this regard is confiscatory, as it requires these elements to be charged off from surplus.

Account 146, " Regulatory Commission Suspense." There is to be placed in this account all expenses incurred by the company

in connection, " A. * * * with formal cases before Federal or State Regulatory Commissions, or other regulatory bodies, or cases in which such a body is a party." The account lists the expenses. In part they are the fees of attorneys, accountants, engineers, witnesses, salary of officers and employees especially assigned to valuation of the company's property, traveling expenses, printing and engineering supplies, " Amounts assessed against the company by this Commission, its officers, agents and employees, including employees temporarily employed." The instructions further provided: " B. Amounts charged hereto shall be distributed to other accounts only over such period and in such manner as the Commission may by order prescribe. C. No debit for any expenditure described in paragraph A shall be made to any other account in this system of accounts except by clearing through this account." The Commission may employ engineers, accountants and investigators at the expense of the utility corporation and (Pub. Service Law, § 72) require the company to pay from its funds the expenses, and if this account and the instructions are to be followed, the amount paid goes into a suspense account and may not be charged to operating expenses until such a time as the Commission may direct. The company's own expenses in connection with these investigations likewise go into this suspense account and are not charged to operating expenses until permission is obtained from the Commission. Such power is not granted to the Commission by subdivision 4 of section 66. It is an unwarranted assumption of authority. If the Legislature had granted such power, a serious question as to its constitutionality would arise, as these expenses should not be paid from a capital account.

Petitioners object to the provisions as to a perpetual inventory. Direct authority for this requirement has been given by the Legislature. [Pub. Service Law, § 114, added by Laws of 1934, chap. 287.]

The determination should be annulled in the particulars indicated in this opinion and matter remitted to the Commission.

McNamee, Crapser, Bliss and Heffernan, JJ., concur.

Determination annulled in the particulars indicated in opinion and matter remitted to the Commission, with fifty dollars costs and disbursements in one proceeding.