In the Matter of REPUBLIC LIGHT, HEAT AND POWER COMPANY, INC., Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, November 11, 1942.

*John Howell, Killeen and Sweeney* (*Henry W. Killeen* of counsel) for petitioner.

*Gay H. Brown* (*Sherman C. Ward and Harry T. O'Brien, Jr.,* of counsel), for respondent.

HILL, P. J. Review sought by petitioner, Republic Light, Heat and Power Company, Inc., hereinafter called "Republic" of an order made by the Public Service Commission. The matter was transferred by the Special Term to this court for consideration under section 1296 of Civil Practice Act, subdivisions 6 and 7. The only issue or controversy involves the proper bookkeeping entries to be made in connection with $382, consideration received by Republic from the American Locomotive Company in 1931 for an extension main to the latter's Dunkirk plant. It was agreed that the fund would belong to Republic unless the Locomotive Company purchased three million cubic feet of gas per annum, then it was to be refunded. At no time up to 1940, when its use of gas ceased, did it take that amount. The Commission and Republic disagreed as to the account in which the record of this transaction was to be kept during the nine years when the ownership was in suspense and the transaction could not finally be cleared from a bookkeeping standpoint. It is not necessary to recite the history of this controversy, or to hazard an opinion as to which of the contenders presented the correct solution. In determining the final entries to be made in this now closed transaction, it is necessary to consider that the cost of construction in 1931 was $191.94, leaving $190.06 a profit to Republic, or a "windfall" of some kind.

The order under review requires that the final entry shall be: "Contributions in Aid of Construction     Dr. $382.00

to

Reserve for Depreciation of Gas Plant in
    Service                                  Cr.   115.07
    Unearned Surplus                     Cr.   266.93"

The computation which determined that $115.07 should be credited to Reserve for Depreciation is somewhat involved. That amount remains after deducting $76.87 from $191.94, the cost of the extension. The deduction is 40.05 per cent of the cost which, according to the Commission already theoretically has been charged off from capital (plant account) and credited to Depreciation Reserve. The percentage (40.05) is the ratio which the December 1939 depreciation reserve of $2,767,447.08 bore to the book cost of the depreciable property, $6,909,130.24, the theory of the Commission being that such a depreciation reserve existing, the proportionate part of it must have to do with this $191.94 item. This, of course, is entirely theoretical. There is no fact presented which indicates that there was actual depreciation up to the time that the extension was abandoned. So far as the uniform system of accounts and the Commission's power in connection herewith are concerned, the amount and manner in which a reserve for depreciation is set up is solely within the control of the utility. (*Matter of New York Edison Co.* v. *Maltbie,* 271 N. Y. 103, affg. 244 App. Div. 685.) The agreement between Republic and the Locomotive Company indicated that the sale of gas to the latter, having in mind the extension necessary, would not be profitable until the three million cubic feet per annum limit was reached, and as a depreciation reserve largely accrues from operating receipts, the company would have the right to withhold from the reserve any part of the payments made by the Locomotive Company for gas delivered awaiting the eventuality in the contract to determine the ownership of the fund. The extension now being useless and abandoned, the entire cost rather than $115.07 thereof, should be taken from the capital account and credited to Depreciation Reserve. The fact that until 1940, under the contract it was unknown whose money would be used to pay for the extension, militates against the theory of an annual straight line depreciation charge against this item. According to the Commission, any balance over depreciation should be placed in the "Unearned Surplus" account. This item is not within the description of that account contained in the Uniform

System definition, which follows: "This account shall include all surplus not classified herein as earned surplus. It shall include surplus arising from the acquisition of the utility's capital stock, from donations by stockholders of the utility's capital stock, from a reduction of the par value of the utility's capital stock, and from the forgiveness of debt of the utility."

The amount received in excess of the cost of original construction properly belongs in account 615 which, it is stated "covers such items as fees and charges for changing, connecting and disconnecting service, profit on the sale of materials and supplies not ordinarily purchased for re-sale  *  *  *." This is declared to be an operating revenue that the utility is "entitled to receive from furnishing gas utility service and from service incidental thereto  *  *  *." From the payment made, Republic was required not only to construct the extension but to maintain it. This might have been relatively substantial, as the extension passed under a railroad track. These two corporations dealt at arm's length. A credit balance at the end did not indicate improper action by Republic, for it is not illegal for a utility to make a profit. This profit should be recorded in the capital account 271, "Earned Surplus" which is defined, "This account shall include the balance, either debit or credit, of unappropriated surplus arising from earnings". The books of the utility are historical and should reflect what has happened. The Commission is without power to use the Uniform System of Accounts to regulate the transactions. Should the accounts, kept honestly and historically, disclose irregularities within the field of control exercised by the Commission, corrective and regulatory proceedings may be instituted.

The order of the Commission should be annulled with fifty dollars costs and disbursements, and the matter remitted for the making of an order in accordance with the foregoing.

CRAPSER, BLISS, SCHENCK and FOSTER, JJ., concur.

Order annulled on the law, with fifty dollars costs and disbursements and matter remitted to the Public Service Commission.