NEW YORK TELEPHONE CO. v. UNITED STATES et al.

District Court, S. D. New York.

Aug. 24, 1944.

Ralph W. Brown, Frank A. Fritz, and Henry J. Friendly, all of New York City, for New York Telephone Co.

James B. M. McNally, of New York City, for the United States.

Charles R. Denny, General Counsel, of Washington, D. C., for Federal Communications Commission.

Before SWAN, Circuit Judge, and CLANCY and BRIGHT, District Judges.

BRIGHT, District Judge.

Defendants move for summary judgment on the ground that there is no genuine issue of fact. Plaintiff asks, at this time, no affirmative relief.

Jurisdiction is not questioned, and is established by Section 402(a) of the Commissions Act of 1934, 48 Stat. 1064, 1093, 47 U.S.C.A. § 402(a), and by the Urgent Deficiencies Appropriation Act, 38 Stat. 219, 28 U.S.C.A. § 41(28) and Sections 46 and 48.

The action is brought to enjoin and annul an order of the Federal Communications Commission dated December 14, 1943, which directed plaintiff to make certain accounting changes in its books, by reducing its surplus by $4,166,510.57 (the excess of payments by plaintiff to American Telephone & Telegraph Company, which we will call the "American Company," for telephone plant purchased by plaintiff from the latter on November 1, 1925, September 1, 1926, and December 31, 1928, and for telephone instruments so acquired on December 31, 1927) over the amount found by the Commission to represent the net book cost of such acquisitions on the books of the American at the time of such purchase; to restate this investment in plant so acquired; to balance these changes by adding to depreciation reserve $3,879,957.94; and to make other entries in its accounts.

At the time of these acquisitions, the American Company owned all of the outstanding common stock of the plaintiff. There were also outstanding in the hands of the public 250,000 shares of plaintiff's 6½% $100. cumulative preferred stock, and in excess of $132,000,000 of mortgage bonds. All of plaintiff's officers, and at least two-thirds of its directors were not directors, officers or employees of the American Company. It maintained its own books and records, and its employees, property and business were separate and apart from those of the American Company.

Prior to 1925 the American Company had furnished intrastate and interstate toll service between certain points in New York. In that year it was agreed that such business would be transferred to plaintiff. In order to accomplish that, plaintiff purchased from the American Company certain toll plant, consisting of tangible property such as poles, wires, aerials and underground cable rights of way, etc., as of November 1, 1925, September 1, 1926, and December 31, 1928.

Prior to December 31, 1927, the American Company as holder of the fundamental Bell patents, owned three small but essential parts of the telephone equipment placed with subscribers by plaintiff. These parts were the transmitter, receiver and an induction coil, and were commonly known as the instruments. On that date the American Company sold to plaintiff the instruments then in service or in the supplies of plaintiff, at a price based upon then average price charged the American Company by Western Electric Company, the manufacturer of the instruments, less an allowance of 20% to reflect the condition of the instruments.

The purchase price for the toll plant was agreed upon as being an amount equal to the cost of reproduction less deterioration, determined by a field inspection and detailed appraisal; and that of the instruments was approved by qualified engineers

of the plaintiff. A tabulation of these purchases as compared with the book cost to the American Company shows:

| Toll Plant | Purchase Price | American Book Cost | American Depreciation Reserve | American Net Book Cost | Cost of Purchase Price over Net Book Cost |
|---|---|---|---|---|---|
| 11/1/25 | 5,831,884.78 | 5,010,340.19 | 801,858.95 | 4,208,481.24 | 1,623,403.54 |
| 9/1/26 | 97,310.39 | 95,924.66 | 14,449.20 | 81,475.46 | 15,834.93 |
| 12/31/28 | 44,246.30 | 28,077.64 | 4,144.78 | 23,932.86 | 20,313.44 |
| | 5,973,441.47 | 5,134,342.49 | 820,452.93 | 4,313,889.56 | 1,659,551.91 |
| Instruments | | | | | |
| 12/31/27 | 6,661,238.91 | 8,135,224.98 | 3,980,944.73 | 4,154,280.25 | 2,506,958.66 |
| | 12,634,680.38 | 13,269,567.47 | 4,801,397.66 | 8,468,169.81 | 4,166,510.57 |

At the time of these transactions, plaintiff was a telephone company within the meaning of the Interstate Commerce Act and subject to Section 20 of that Act, 24 Stat. 379, 386 as amended by 34 Stat. 584, 593, 594, 49 U.S.C.A. § 20, and was prohibited by that section from keeping any other accounts than those prescribed by the Interstate Commerce Commission. That Commission, on December 10, 1912, prescribed a uniform system of accounts for telephone companies, and that system, as interpreted by the Interstate Commerce Commission, by Instruction 10, provided:

"10. Costs to be actual money costs— All charges made to fixed capital or other property accounts with respect to any property acquired on or after January 1, 1913, should be the actual money costs of the property. * * *"

Instruction 13 of that system provided, in part:

"13. Plant and equipment and other property purchased.—When any property in the form of a going or completed plant is purchased, an appraisal of the property so acquired should be made, and the different constituent elements of the plant (and equipment, if any) or other property acquired should be appraised at their structural value; that is to say, at the estimated cost of replacement or reproduction less deterioration to the then existing conditions through wear and tear, obsolescence, and inadequacy. If the actual money value of the consideration given for the plant or other property was at the time of the acquisition in excess of such appraised value, the excess should be charged to account No. 204. Other Intangible Capital, 'and the appraised values of the constituent elements should be charged to the appropriate fixed capital accounts as hereinafter designated. If the actual money value of the consideration given was not in excess of such appraised value, such actual money value should be distributed through the said accounts in proportion to the said appraised value of the constituent elements appropriate to the respective accounts. * * *"

The accounting bulletin adopted by the Interstate Commerce Commission on June 26, 1916, provided in case No. 30:

"Query. What items should be classified as 'going or completed plant' under section 13, page 33, 'Plant and equipment and other property purchased' of the Uniform System of Accounts for Class A and B companies?

"Answer. The term 'going or completed plant' is intended to cover only the entire plant of a telephone company or an important unit thereof; such as—

"(1) A telephone company as a whole,

"(2) An entire central office.

"(3) A system of lines and stations within a given area, or

"(4) A complete section of toll plant.

"The purchase by one company from another of several poles and appurtenances, a switchboard, or other minor portions of plant shall be treated in the same manner as the purchase of materials and supplies; i. e., the purchasing company shall charge the fixed capital accounts at cost, as provided in section 10, page 33, of the Uniform System of Accounts for Class A and B companies."

Plaintiff, purporting to act under Instruction 13, and treating the acquisition of the plant as coming within case No. 30, distributed the $5,973,441.47, which it claimed was the actual cost to it of that property, among its various plant accounts in the

precise amount of appraised structural value of the various types of property purchased; and purporting to act under Instruction 10, recorded the $6,661,238.91, which it claimed to have paid for the instruments, in the plant accounts.

The Interstate Commerce Commission's system of accounts continued in effect until January 1, 1933, on which date a revised system became effective, which continued in force until January 1, 1937, the effective date of the uniform system of accounts for telephone companies prescribed by the defendant Federal Communications Commission. The revision of the system by the Interstate Commerce Commission as of January 1, 1933, did not require any change by the plaintiff in the accounting which it had performed with respect to the transactions in question.

The Communications Act of 1934, 48 Stat. 1064, 47 U.S.C.A. § 151 et seq., approved June 19, 1934, became effective upon the organization of the Commission on July 11, 1934, except as to Sections 1 and 4 thereof, which became effective on July 1, 1934; and plaintiff was and is engaged in interstate and foreign communication by wire and radio within the meaning of Section 2 of that Act.

Under that Act, the defendant, Federal Communications Commission, is given power to "make such rules and regulations, and issue such orders, not inconsistent with this Act, as may be necessary in the execution of its functions," § 4(i); to "At any time require any such carrier (which, by definition in 3(h) would include this plaintiff) to file with the Commission a statement showing the original cost at the time of dedication to the public use of all or of any part of the property owned or used by said carrier. * * * If the carrier owning the property at the time such original cost is reported shall have paid more or less than the original cost to acquire the same, the amount of such cost of acquisition, and any facts which the Commission may require in connection therewith, shall be reported with such original cost", § 213(c); to "prescribe the forms of any and all accounts, records, and memoranda to be kept by carriers subject to this Act", § 220(a), and under subdivision (c) of the same section, the "burden of proof to justify every accounting entry questioned by the Commission shall be on the person making, authorizing, or requiring such entry and the Commission may suspend a charge or credit pending sub-

mission of proof by such person." And under subdivision (g), "After the Commission has prescribed the forms and manner of keeping of accounts, records, and memoranda to be kept by any person as herein provided, it shall be unlawful for such person to keep any other accounts, records, or memoranda than those so prescribed or such as may be approved by the Commission or to keep the accounts in any other manner than that prescribed or approved by the Commission."

By Section 604(a), "All orders, determinations, rules, regulations, * * * which have been issued, made, or granted by the Interstate Commerce Commission * * * under any provision of law repealed or amended by this Act or in the exercise of duties, powers, or functions transferred to the Commission by this Act, and which are in effect at the time this section takes effect, shall continue in effect until modified, terminated, superseded, or repealed by the Commission or by operation of law."

On June 19, 1935, the defendant Commission issued telephone division order No. 7-G, which prescribed for the plaintiff and other telephone companies, a system of accounts effective January 1, 1936, which differed from both systems theretofore prescribed by the Interstate Commerce Commission. Insofar as we are now interested, this system of accounts prescribed, as to balance sheet accounts and investments, that account 100.1, "Telephone plant in service," shall include the original cost (defined in § 31.01—3(k) as meaning "the actual money cost of * * * property at the time when it was first dedicated to the public use, whether by the accounting party or by predecessors"), of the company's property used in telephone service at the date of the balance sheet; and Account 100.4, "Telephone plant acquisitions adjustment", should include amounts determined in accordance with § 31.2–21 representing the difference between (1) the amount of money actually paid for telephone plant acquired, plus expense of acquisition and (2) the original cost of such plant less the amount of reserve requirements for depreciation and amortization of the property acquired. "(c) The amounts recorded in this Section with respect to each property acquisition shall be disposed of, written off, or provision shall be made for the amortization thereof in such manner as this Commission may direct". Section 21.2–21 relating to telephone plant acquired provided

that when substantially complete toll line was acquired from predecessors, and charged to account 276, "Telephone plant acquired," the accounting shall be completed as follows: The original cost shall be charged to the telephone plant accounts as appropriate and credited to Account 276; the reserve requirements for depreciation and amortization shall be credited to Account 171 "depreciation reserve," and Account 172 "amortization reserve," and debited to Account 276; and the amount remaining in Account 276 shall be debited or credited as appropriate to Account 100.4 "Telephone plant acquisition adjustment," with certain exceptions not important here.

The promulgation of this system of accounts was met by an action in which the American Company and other telephone companies, including this plaintiff, were plaintiffs, and the United States and Federal Communications Commission were defendants, to enjoin and annul the proposed system. The plaintiffs were almost completely unsuccessful in this court (American Telephone & Telegraph Co. v. United States, 14 F.Supp. 121), and upon appeal, the Supreme Court affirmed, 292 U.S. 232, 57 S.Ct. 170, 174, 81 L.Ed. 142. In this court the defendants denied that the definition of original cost would require the plaintiffs to restate as of January 1, 1936, their property investment accounts by eliminating therefrom the recorded cost or investment of the plaintiff in property theretofore acquired from another public utility.

The Statutory Court made findings of fact, in part, as follows: V, that the order 7-C does not require that the recorded cost or investment in plaintiff's property theretofore acquired from another public utility be obliterated or eliminated from their investment accounts, but merely requires the plaintiffs to segregate the element of recorded cost or investment into investment accounts 100.1—2—3—4; VIII, that the order does not prevent plaintiffs from recovering amounts included in accounts 100.4 in view of the alternative provisions in paragraph C, and the Commission has made no direction in paragraph C, and the Commission has made no direction with respect to the disposition of any such accounts; XI, that the order does not require plaintiffs to write off any portion of their actual investment where they had paid in excess of the original cost; XII, does not require plaintiffs to make radical or retroactive changes in their completed accounts, but merely requires the reclassification of bal-ances as of its effective date in certain balance sheet accounts; and XIII, it does not require that amounts recorded in account 100.4 be disposed of, written off, or amortized by plaintiffs, the form of accounting to be performed is dependent upon the development of facts in connection with each individual acquisition. And in the Thirteenth conclusion of law, the lower court found that the order was not retroactive in its requirements.

In the Supreme Court, Mr. Justice Cardozo wrote in part:

"The argument is that account 100.4, representing the difference between original and present cost, is not to be reckoned, either wholly or in part, as a statement of existing assets, but must be written off completely. The Commission is charged, we are told, with a mandatory duty to extinguish the entire balance recorded in that account, its presence under the title of 'investments' having the effect of a misleading label. To give support to that conception of official duty, they rely on subdivision (C), which provides, as we have seen, that 'the amounts recorded in this account with respect to each property acquisition shall be disposed of, written off, or provision shall be made for the amortization thereof in such manner as this Commission may direct.'

"If subdivision (C) had the meaning thus imputed to it, there would be force in the contention that the effect of the order is to distort in an arbitrary fashion the value of the assets. But the imputed meaning is not the true one. The Commission is not under a duty to write off the whole or any part of the balance in 100.4, if the difference between original and present cost is a true increment of value. On the contrary, only such amount will be written off as appears, upon an application for appropriate directions, to be a fictitious or paper increment. This is made clear, if it might otherwise be doubtful, by administrative construction. * * *

"To avoid the chance of misunderstanding and to give adequate assurance to the companies as to the practice to be followed, we requested the Assistant Attorney General to reduce his statements in that regard to writing in behalf of the Commission. He did this and informs us that 'the Federal Communications Commission construes the provisions of Telephone Division Order No. 7-C, issued June 19, 1935, pertaining to account 100.4' as meaning 'that amounts in-

cluded in account 100.4 that are deemed, after a fair consideration of all the circumstances, to represent an investment which the accounting company has made in assets of continuing value will be retained in that account until such assets cease to exist or are retired; and, in accordance with paragraph (C) of account 100.4 provision will be made for their amortization.'

"We accept this declaration as an administrative construction binding upon the Commission in its future dealings with the companies. * * * The administrative construction now affixed to the contested order devitalizes the objection that the difference between present value and original cost is withdrawn from recognition as a legitimate investment.

"We are not impressed by the argument that the classification is to be viewed as arbitrary because the fate of any item, its ultimate disposition, remains in some degree uncertain until the Commission has given particular directions with reference thereto. By being included in the adjustment account, it is classified as provisionally a true investment, subject to be taken out of that account and given a different character if investigation by the Commission shows it to be deserving of that treatment. Such a reservation does not amount to a departure from the statutory power to fix the forms of accounts for 'classes' of carriers rather than for individuals. The forms of the accounts are fixed, and fixed by regulations of adequate generality. What disposition of their content may afterwards be suitable upon discovery that particular items have been carried at an excessive figure must depend upon evidentiary circumstances, difficult to define or catalogue in advance of the event. If once there was any need for explanation more precise than that afforded by the order, it is now supplied, we think, by an administrative construction, which must be read into the order as supplementary thereto."

It is to be observed that this case did not decide what power the Commission had other than to order a uniform system of accounts. The order 7–C was clearly found to be within the law as a constitutional and statutory exercise of the powers conferred upon the Commission by the Communications Act of 1934. While appellants in that case complained that the system of accounting might authorize the Commission in the future to do something toward obliterating or striking out the difference between original cost and purchase price, the court refused to adjudicate as to the validity of the system based upon any such anticipated action. It left the determination of that point to be decided upon whatever facts might subsequently be revealed as justifying it. It would seem that the only question here is whether the Commission now has power to direct the debit to surplus and the other charges of which complaint is now made. The other case stopped short of deciding that.

From time to time after the acquisition of the toll plant and instruments, certain units of both have been retired and written out of the plant accounts at the amounts recorded therein, and the same amount less salvage has been charged to depreciation reserve. Out of the total plant purchased at a cost of $5,973,441.27, there remained in the plant accounts as of January 1, 1937, toll plant of an estimated book cost of $2,971,058.99, and as of January 1, 1942, an estimated book cost of $2,611,586.39. Out of the instruments purchased at a cost of $6,661,238.91, there remained in the plant accounts as of January 1, 1937, instruments having an estimated book cost of $2,433,105.41, and as of January 1, 1942, an estimated book cost of $630,279.13.

Here the accounting practice followed by the plaintiff, at the time of and for a number of years after the acquisition of the toll plant and instruments, was, in our opinion, in conformity with the rules of the Interstate Commerce Commission. Testimony that it did not follow good accounting practice would be immaterial if the practice followed was within the regulations then in force.

When the "original cost" theory was introduced by the Communications Act of 1934, insofar as telephone companies were concerned, a new system of accounting was devised by the Federal Communications Commission which required for the first time the segregation of the so-called "profit" into an account other than that in which original cost was entered. At that time some portion of the toll plant and instruments had been retired. The right to make the segregation was attacked in the American T. & T. Co. case, one of the reasons given being that because segregation was required, the difference between original cost and the alleged purchase price "must be written off completely. The Commission is charged * * * with a mandatory duty to extinguish the entire balance re-

938

corded in" account 100.4 pursuant to subdivision (C) of that accounting requirement. Mr. Justice Cardozo answered. that as above quoted.

■ The administrative construction referred to, and plainly appearing in the stipulation then filed by the counsel for the Federal Communications Commission, is not present in any of the other cases to which our attention has been called; and this case, for that reason, if for no other, is clearly to be distinguished from those cited. That administrative construction, if none other, it seems to us, precludes the action now taken until (1) there has been a "fair consideration of all the circumstances", and (2) unless the difference between the original and present cost is not "a true increment of value" but is a "fictitious or paper increment"; and action to obliterate must depend upon "evidentiary circumstances" later to be developed.

Here there has been no determination whether the difference between original cost and the price claimed to have been paid is a true increment of value, unless it is the arbitrary determination that it cannot be because it is the result of a transaction between a parent and an affiliate. There might be real doubt to make such a determination if based upon any such theory. New York Edison Co. v. Maltbie, 244 App.Div. 685-689, 281 N.Y.S. 223, affirmed 271 N.Y. 103, 2 N.E.2d 277.

■ The order under review proceeds upon the theory that plaintiff's accounting in question was improper when made and should be corrected. In our opinion the entries made at the time of the four transactions in question accorded with the system prescribed by the Interstate Commerce Commission. They were recorded at "actual money costs" and we do not understand that the fairness of the appraisals then made is questioned. Defendants' position is that the fairness of the appraisals is immaterial because in transactions between affiliates the transferee is bound to take the transferor's net book cost. But if the entries were correct when made, as we now determine, the defendant Commission, under the present record, cannot apply retroactively a new system to write down the plaintiff's surplus. Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370-389, 52 S.Ct. 183, 76 L.Ed. 348.

That this is so seems all the more true in view of the stipulation of these same defendants made in American T. & T. Co. v. United States, supra; certainly in the absence of proof that the excess of price over the seller's net book cost was not a "true increment of value." There has not been any determination based upon a fair consideration of all the circumstances in accordance with the stipulation mentioned, nor upon the evidentiary circumstances referred to in the opinion of the Supreme Court.

The motion for summary judgment is, therefore, denied.