In the Matter of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, and GENERAL PUBLIC UTILITIES CORPORATION, Intervener, Petitioner, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Third Department, January 7, 1948.

*Nixon, Hargrave, Middleton & Devans,* attorneys (*Edmund B. Naylon* of counsel), for petitioner.

*Shearman & Sterling & Wright,* attorneys (*Allen E. Throop* of counsel), for intervener-petitioner.

*Philip Halpern,* counsel to Public Service Commission, for respondents.

HILL, P. J. Rochester Gas & Electric Corporation petitioned under article 78 of the Civil Practice Act for this review of a determination made by the Public Service Commission of the State of New York. Its parent company, General Public Utilities Corporation, has been permitted to intervene. The petitioner applied to the Commission under section 69 of the Public Service Law for authorization to issue and sell $16,677,000 first mortgage bonds, 50,000 shares of preferred stock and sufficient shares of its no-par common stock to realize $2,000,000 to the company, and further asked the Commission's approval and consent as prescribed by the Stock Corporation Law, to amend its certificate of incorporation in connection with the increase of stock. (§§ 36, 38.)

The Public Service Law (§ 69) outlines the powers of the Commission in connection with the issuance of stock, bonds and other certificates of indebtedness. " A gas corporation or electric corporation organized or existing, or hereafter incorporated, under and by virtue of the laws of the state of New York may issue stocks, bonds, or other evidences of indebtedness * * * when necessary for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations * * *; provided and not otherwise that there shall have been secured from the commission an order authorizing such issue, and the amount thereof, and stating the purposes to which the issue or proceeds thereof are to be applied,

and that, in the opinion of the commission, the money, property or labor to be procured or paid for by the issue of such stock, bonds, notes or other evidences of indebtedness is or has been reasonably required for the purposes specified in the order * * *. For the purpose of enabling it to determine whether it should issue such an order, the commission shall make such inquiry or investigation, hold such hearings and examine such witnesses, books, papers, documents or contracts as it may deem of importance in enabling it to reach a determination. * * *."

The Commission has determined that the moneys are needed for the construction and improvement of petitioner's plant, distributing system and for the maintenance of its service and in part for the discharge of outstanding obligations. The determination of the Commission as to these matters is not at issue before this court, as appears by its brief on this review. " The petitioner desired to sell the securities and to use the proceeds thereof, approximately $23,500,000, to finance the construction of about $16,000,000 of new plant facilities and to refund outstanding obligations of about $7,500,000. It is agreed that these are proper corporate purposes for the issuance and sale of securities under Section 69 and there is no issue in this case in that regard." Thus it has been determined that the new issue will not be unfair or inequitable to the present bond or security holders and stockholders of the company, and that the public of Rochester and vicinity needs the service which it is proposed to furnish through the increased facilities which will be constructed with a portion of the proceeds, but the Commission has refused to indorse the amended certificate of incorporation and finally approve the issuance of the first mortgage bonds and stocks unless and until the petitioner consents to change, modify and charge off entries in its books of account to reflect a claimed deficiency of $10,700,000 in depreciation reserve, and so-called " impairments " in plant utility accounts amounting to $6,658,171. Against such diminution of assets, according to the books of the company, it is required to set aside $75,000 a month from earnings until the aggregate thereof amounts substantially to $7,750,000, and further, to pay into the depreciation reserve account $2,100,000 a year from earnings. The petitioner and intervener refused to comply with these requirements and seek a review of the Commission's determination.

The Commission has determined at least two unrelated matters, making its approval of the necessary issuance of new securities dependent upon petitioner's consent to change its books of account to show a deficit rather than a surplus. Such

requirement seems of doubtful legality. The public in and about Rochester is interested in the extension of petitioner's plant to accommodate increased demands. The Commission recognizes that the enlargement is necessary and approves the financing plan proposed by petitioner, but it attaches conditions that book entries as to surplus for depreciation and value of the plant be eliminated from petitioner's books and requires that the deficiency created by the elimination of the items be reduced by the application for nearly a decade of $900,000 a year from petitioner's income, and further the approval is conditioned that "straight line" instead of the present observed depreciation be adopted, with a required annual contribution of $2,100,000. Section 69 (Public Service Law) is entitled, " Approval of issues of stock, bonds and other forms of indebtedness; approval of mergers or consolidations." No reference is contained therein to the keeping of accounts in accordance with prescribed uniform methods, but section 66 (Public Service Law) entitled, " General powers of commission in respect to gas and electricity " enacts that the Commission shall " 4. Have power, in its discretion, to prescribe uniform methods of keeping accounts, records and books to be observed by gas corporations and electric corporations and by municipalities engaged in the manufacture, sale and distribution of gas and electricity for light, heat or power. It may also in its discretion prescribe, by order, forms of accounts, records and memoranda to be kept by such persons, corporations and municipalities. Notice of alterations by the commission in the required method or form of keeping a system of accounts shall be given to such persons or corporations by the commission at least six months before the same shall take effect. Any other and additional forms of accounts, records and memoranda kept by such corporations shall be subject to examination by the commission."

The Public Service Commission has various and divergent powers in connection with the gas and electric business within this State. It may enforce safe and adequate service, just and reasonable charges, inspection of gas and electric meters and approve of incorporation and franchises, transfer of franchises or stocks, determine complaints as to quality of gas and electricity and fix rates to be charged. (Public Service Law, art. 4.) For a violation of any supervisory order a penalty of $1,000 a day is prescribed.

A reasonable exercise of the powers of the Commission would seem to require it to pass upon this wide variety of subjects separately rather than to grant a proper request of a utility

company only upon its consent to observe the Commission's order concerning an extraneous matter. The penalty in the statute seems adequate to enforce performance by the utility of proper orders without recourse to coercive or punitive conditions attached to the granting of reasonable requests.

Concerning the claimed deficiency of $10,700,000 in the reserve for depreciation, the petitioner presented testimony of two of its officers or employees that there was no deficiency; the finding was made upon the testimony of a single employee of the Commission. The opinion of the Commissioner in this regard states: " In making this estimate as well as his previous studies he adopted the straight-line group method of depreciation accounting. He explained that in the limited time available he was unable to make a careful restudy of the property, which eventually he expects to do, but he had available the background of the prior gas, electric and common property studies which he had made." The Court of Appeals and this court have passed upon the validity of " straight line " depreciation. In *Matter of New York Edison Co.* v. *Maltbie* (244 App. Div. 685; 245 App. Div. 897, affd. 271 N. Y. 103, 106) the following question was answered in the negative by the Court of Appeals: " Are the provisions of the said orders of the Commission which require corporations to adopt the ' straight-line ' method of accounting for depreciation, as therein provided, valid under the laws and Constitutions of the State of New York and of the United States of America? "

The balance of the more than $17,000,000 claimed " impairment " of petitioner's capital is made up of two items; one substantially $3,800,000 which the Commission in an earlier order directed to be charged off as representing the excess of the book entry over the actual cost of water power and other items purchased by petitioner from a predecessor. The Commission's order in this regard was annulled by this court (271 App. Div. 202). No appeal has been taken from that decision. The other item is substantially $2,800,000 and of the same general character as the last previous one. An earlier order has likewise been made by the Commission as to this item and an appeal was taken to this court. The matter was not considered by us on its merits (272 App. Div. 162) because of the statement by the Commission that it had granted a rehearing. No rehearing has ever been had. Substantially all of the transactions involved in the last two items took place nearly forty years ago, and the entries in the books made at that time have been unquestioned until recently. In the earlier appeal to the

Court of Appeals (271 N. Y. 103, 105) that court answered in the negative the following question: " Are the provisions of the said orders of the Commission which direct corporations to rewrite their Operating Property (Fixed Capital) Accounts upon the basis of ' original cost,' which is defined as ' the actual money cost (or the current money value of any consideration other than money) of property at the time when it was first devoted to the public service, whether by the accounting company or by a predecessor public utility,' valid under the laws and Constitutions of the state of New York and the United States of America? ''

The Federal courts have disapproved of " straight line " calculations as to depreciation. In *McCardle* v. *Indianapolis Water Co.* (272 U. S. 400, 416) the opinion states: "The deduction was not based on an inspection of the property. It was the result of a ' straight line ' calculation based on age and estimated or assumed useful life of perishable elements. * * * The testimony of competent valuation engineers who examined the property and made estimates in respect of its condition is to be preferred to mere calculations based on averages and assumed probabilities.'' *Consolidated Gas Co. of New York* v. *Newton* (267 F. 231, 265) contains this statement concerning the testimony of a witness as to depreciation figured under " straight line " methods, " This was necessarily a conjecture, based upon the supposed life of the plant; it has no application while the plant is kept up.''

A frequently quoted authority in this State is *People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.* (264 N. Y. 17, 20). The Commission had there approved the purchase of a natural gas plant but only upon the condition that a portion of the purchase price should be charged to surplus. The opinion states concerning the powers of the Commission: " The most that can be urged is that it may impose conditions which will insure efficient operation in the public interest in those matters which fall within the general field of its powers. It cannot make its consent dependent upon conditions which are unreasonable or which do not change the terms of the transfer of the franchise, works or systems, or which encroach upon the right of the relator to administer its corporate affairs according to its own judgment in matters in which the Legislature has not given the Public Service Commission any regulatory or supervisory powers.'' It may not be said in this case that a requirement dealing with future increase of surplus for depreciation will presently add anything to the marketability or stability of the

securities which petitioner seeks to issue. Should adjustments appear to be necessary in connection with surplus for depreciation after a legal and proper inspection and appraisal as to observed depreciation has been made, the Commission has full power to act. The *Iroquois* opinion (p. 21) contains a statement which seems to apply to the other two so-called " impaired " items: " The power vested in the Commission to prescribe uniform methods of keeping accounts and records   *   *   * does not include the power to compel a corporation to write off from its book value a loss which it has not sustained, or to give up a part of its constitutional rights." The opinion cites upon that general subject *Los Angeles Gas & Electric Corp.* v. *Railroad Commission of California* (289 U. S. 287).

The determination should be annulled and the matter remitted to the Commission for further consideration.

FOSTER, J. (dissenting). There is some doubt as to whether this proceeding presents for review a final determination of the Public Service Commission. Petitioner sought approval for the issuance and sale of first mortgage bonds in the principal amount of $16,677,000; 50,000 shares of preferred stock, and shares of common stock, of no-par value, sufficient to raise $2,000,000. The proposals submitted by petitioner were not conclusive, for the prices and terms of the securities were to be determined by competitive bidding, and after such matters were determined the further approval of the Commission would necessarily have to be sought. However, the Commission entertained the proposals and made certain recommendations. Thereupon petitioner amended its application and accepted for the most part, and without prejudice, the requirements laid down in the Commission's original memorandum. The Commission's final resolutions set forth conditions which differed in two important respects from the proposals submitted in the amended petition. Petitioner refused to comply with these and withdrew its amended petition. There is dispute as to its right to do this, which seems wholly unimportant. The important thing is that the Commission finally denied its application and refused to grant a rehearing.

In other words petitioner sought, in advance of the event, advice as to whether the Commission would approve the issuance and sale of securities upon terms and conditions that were partially unknown. From a viewpoint of strict construction the Commission was obliged only to entertain an application for an order approving a complete plan for the issuance and sale of securities at a definite price, interest and dividend rate. But

from a practical viewpoint, to compel conformance to such a narrow construction might easily result in an immense duplication of labor. If petitioner acted without first obtaining the Commission's approval to invite bids, and without knowledge with respect to any conditions that might be imposed, its work might be in vain. The latter hurdle had to be surmounted, if possible, before it would be practical for petitioner to proceed further. In entertaining the application at all the Commission acquiesced in this view. It finally imposed conditions which petitioner refused to accept. The order of the Commission is final in form and has all the finality that the mechanics of the situation permitted. It has refused to approve the issuance and sale of securities except upon conditions relevant to the financial setup of petitioner which the latter refuses to accept. It would seem a useless bit of legal technicality to hold now that the action of the Commission is not final in the sense that it may be reviewed. Such a holding would do nothing more or less than solidify the impasse already reached.

A construction of section 69 of the Public Service Law is involved in this controversy, with sections 36 and 38 of the Stock Corporation Law playing a minor role. The real issue in the case is the power of the Commission under section 69 of the Public Service Law. Petitioner apparently takes the view that the only power the Commission has under this section is to determine whether the proposed issuance of securities is necessary and reasonably required for one of the purposes stated in the statute. To the contrary, the Commission maintains that it has the power and duty to determine whether the issuance of securities is in the public interest, and that the fulfillment of its duty in that regard requires it to take into consideration the financial soundness of the company, its proposed total capitalization, the value of its property and all other factors affecting the interest of the investing and consuming public. These contrasting views pose the issue. The Commission agrees that the issuance of the proposed securties is for one or more of the purposes enumerated in the statute, and hence there is no issue on that score. It follows that if the petitioner's view is correct the Commission was bound to approve its application irrespective of other considerations.

I think petitioner's conception of the Commission's power is erroneous. Carried to its ultimate conclusion it would mean that whatever cracks might appear to exist in the capital structure of a public utility the Commission would be powerless to withhold its approval for the issuance of new securities so long

as they are to be issued for value received and reasonably necessary for one of the purposes enumerated in the statute. This extreme view is inconsistent with the fundamental supposition that implicit in every section of the Public Service Law is the standard of public interest, and wherever regulatory power is conferred on the Commission it must be exercised in the light of this standard. By the same token every part of the statute conferring power in general language must be broadly construed so far as the public interest is concerned, and limited only when such a legislative intent is plainly expressed or when the exercise of power may violate constitutional limitations (*Matter of Rochester Gas & Electric Corp.* v. *Maltbie*, 258 App. Div. 682, affd. 284 N. Y. 626; *People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.*, 264 N. Y. 17; *Matter of International Railway Co.* v. *Public Service Comm.*, 264 App. Div. 506, affd. 289 N. Y. 830; *Matter of Staten Island Edison Corp.* v. *Public Service Comm.*, 263 N. Y. 209).

The language of the disputed section imposes no limitation such as the petitioner claims. For instance it provides, " * * * For the purposes of enabling it to determine whether it should issue such an order, the Commission shall make such inquiry or investigation, hold such hearings and examine such witnesses, books, papers, documents or contracts as it may deem of importance in enabling it to reach a determination * * *." Such a determination would be relatively simple, and would not require the power to investigate in such detail as the statute directs and permits, if the only purpose was to determine whether the proposed securities were reasonably necessary for one of the purposes mentioned in the statute. It would seem unnecessary to strain the point that the public, both consumers and investors, has an interest so far as the issuance of new securities is concerned in whether a utility is already over-capitalized or its existing capital structure impaired. The most elementary considerations of regulation in the public interest dictate the necessity of such a view. Even in those cases where dicta is cited to the contrary the facts do not support a different conclusion, and the dicta should be read in connection with the facts passed on (*People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1; *People ex rel. Binghamton Light, Heat and Power Co.* v. *Stevens*, 203 N. Y. 7).

When we come to the recommendations by the Commission relative to the proposals submitted by petitioner we find the following situation. Two cases are presently before the Commission and undetermined, which involve the question of whether

a total sum of $6,658,171 shall be taken out of petitioner's capital accounts and charged to surplus. It is unnecessary to attempt to review in detail the conflicting claims as to the matters involved in these cases. Suffice it to say that they have yet to be determined and no one can say at the present time what their ultimate disposition may be. In addition to these matters there is substantial testimony in the record, accepted by the Commission, which tends to indicate that petitioner's depreciation reserve may have a deficiency of some $10,700,000. This is also a matter of sharp dispute, but for the purpose of the present review no one can say how this controversy may ultimately be resolved. This alleged deficiency item was computed by the Commission's witness upon the basis of what is known as straight line depreciation. This method of computation has been condemned (*Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685; 245 App. Div. 897, affd. 271 N. Y. 103), but I do not understand the condemnation to extend to the use of this method in all cases and under all conditions. In fact under proper conditions its use by a qualified expert has been approved (*Matter of Yonkers Railroad Co.* v. *Maltbie,* 251 App. Div. 204; *Matter of Long Island Lighting Co.* v. *Maltbie,* 249 App. Div. 918). The straight line method of determining depreciation is only condemned where it is imposed as a universal and inflexible rule without regard to the facts of a particular case. Apparently where there is a sufficient factual foundation to indicate that the method accurately reflects real depreciation it may be used.

In any event the method used is somewhat of a collateral issue so far as this review is concerned. The Commission has made no final order with respect to such alleged depreciation. All that the Commission's resolutions required was that petitioner make provision for a special surplus account in the sum of $17,358,171. This sum represents the total of the disputed items in the cases now pending before the Commission plus a possible deficiency in petitioner's depreciation reserve. Against this amount petitioner was to earmark the surplus which it had on hand December 31, 1946, in the amount of $9,578,950. The difference between these amounts petitioner was to make up by reservations from current income, prior to the payment of any dividends on common stock, and on the basis of $75,000 per month. The purpose of this special surplus account was to take care of any necessary adjustments in the balance sheet accounts and in that manner to insure the financial soundness of the securities regardless of the outcome of controversies with respect

to the questioned capital issue. There was no determination that the whole sum of $17,300,000 would be needed to cover such adjustments; nor was there any direction made for the transfer of any part of the special surplus account to any other account. The surplus special account was simply moneys earmarked so as to prevent their use for the payment of dividends prior to final determinations as to disputed items, and to be kept intact for adjustments that might be ultimately ordered. In the future if such adjustments are directed by the Commission petitioner will have an opportunity for reviewing them. If it should be determined that the Commission is wrong about these disputed capital items, then the amount in the special surplus account will, of course, be returned to free surplus; and the same disposition will be made of any balance over and above the amount of any capital impairment shown. Without discussing all the minutia involved the foregoing is a rough summary of the action which the Commission took, that is to say, the proposals which it recommended as a basis for its approval. In all this I can see nothing arbitrary or capricious, or anything beyond the power of the Commission in its regulatory functions. It is unfortunate, of course, that a matter of this importance to petitioner and the residents of the area affected could not be decided more expeditiously, but that is a circumstance outside of a judicial consideration of an issue of power.

The determination of the Commission should be confirmed.

RUSSELL and DEYO, JJ., concur with HILL, P. J.; FOSTER, J., dissents, in an opinion in which HEFFERNAN, J., concurs.

Determination annulled, on the law and facts, with $50 costs and disbursements, and matter remitted to the Commission for further consideration. [See *post,* p. 930.]